IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WALTER BRZOWSKI ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.  17 CV 09339 |
| ) | |
| JOHN R. BALDWIN,  MICHAEL ) | |
| MELVIN, GUY PIERCE, NICHOLAS ) | |
| LAMB, BRENDA SIGLER, and ) | |
| DAVID HADLEY, ) | |
| ) | |
| Defendants. ) | |

**RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

Defendants' motion to dismiss should be denied because Plaintiff has alleged sufficient facts to show that Defendants illegally and intentionally held Plaintiff in Illinois Department of Corrections custody for 902 days past his release date, with seventeen months of that being served in segregation, despite being repeatedly advised that he should be released.  The Defendants worked together to resist Plaintiff's release in state court and repeatedly misstated to courts that Plaintiff was properly held.

**Argument**

A complaint should not be dismissed if it:  "(1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests[;] and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level." *Bravo v. Midland Credit Mgmt., Inc.*, 812

F.3d 599, 601-02 (7th Cir. 2016). A "'complaint is not required to allege all, or any, of the facts logically entailed by the claim. . . .'" *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) (citation omitted). Rather, the "plaintiff must give enough details about the subject matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Here, the complaint provides sufficient facts that weave a story of the deliberate indifference of employees of the Illinois Department of Corrections, despite Mr. Brzowski's repeated attempts to alert them to the violation of his rights.

The complaint is viewed in the light most favorable to the Plaintiff, "accept[ing] all well-pleaded factual allegations in the plaintiff's complaint as true and draw[ing] all reasonable inferences in the plaintiff's favor." *White v. Keely,* 814 F.3d 883, 887-88 (7th Cir. 2016). The question in considering the motion is "*could* these things have happened[?], not "*did* they happen[?]." *Swanson*, 614 F.3d at 404 (emphasis in original).

1. **Count 1 - Plaintiff's Due Process Claim Is Based on Cognizable Liberty Interests and Not Precluded By State Law Remedies.**

A Due Process claim requires a showing that Plaintiff had: (1) a cognizable liberty interest under the Fourteenth Amendment; (2) a deprivation of that liberty interest occurred; and (3) an absence of due process caused by the Defendants. *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013). Plaintiff is properly claiming a violation of his liberty interest in being detained in prison much longer than he should have been.

Defendants contend that the Plaintiff's due process rights have not been violated because he has no right to "early release" from prison. (Dkt. 33, pgs. 6-7.) Plaintiff is not claiming that should have been released early on mandatory supervised release (MSR). Instead, the Complaint alleges that Plaintiff was held 902 days beyond his sentence. (Dkt. 30, ¶¶ 1, 14, 38.) The Illinois Appellate Court documented the miscalculation of Plaintiff's detention. This decision was attached to the complaint, referenced in the complaint, and can therefore be utilized to support the claims alleged. (Dkt.30-2.) The decision explains in great detail how the Defendants miscalculated Plaintiff's actual incarceration. (*Id.* ¶ 15.) Contrary to Defendants' argument, Plaintiff served his MSR time in prison. (*Id.*, ¶¶ 18-19.) Defendants' argument that Plaintiff is suing about "early release" is contrary to the facts pled in the complaint and cannot succeed.

Second, Defendants contend that Plaintiff has not alleged sufficient facts to prove that any of the Defendants were personally involved in his detention. (Dkt. 33, pg. 7.) Every detail of the deprivation need not be pled if the allegations of the complaint, as a whole, contain sufficient facts to weave a story that holds together. *See Swanson*, 614 F.3d at 404. The Complaint explains how the Defendants were involved in incorrectly calculating his sentence and in opposing his release, and how they refused to correct the errors in internal grievances. (Dkt. 30, ¶¶ 30, 32-34, 39-40.) The allegations are sufficient to state claims against the Defendants.

Finally, Defendants argue that Plaintiff had sufficient state law remedies for this claim. (Dkt. 33, pg. 7.) While courts consider the adequacy and availability of

state court remedies evaluating section 1983 claims that challenge the mistakes of state actors, the existence of a remedy does not automatically preclude a due process claim. *Figgs v. Dawson*, 829 F.3d 895, 907 (7th Cir. 2016). Defendants argue that Plaintiff's petition for *habeas corpus* in Will County in the fall of 2014 shows that Plaintiff had a remedy. (Dkt. 33, pg. 8.) That petition, however, was rendered moot when the underlying convictions were reversed and he was resentenced in July 2015. (Dkt. 30, ¶ ¶ 23-25.) The filing of a mooted *habeas* petition should therefore not preclude Plaintiff's current claims.

Defendants rely on *Toney-El v. Franzen* to argue that the presence of state court remedies precludes Plaintiff's due process claims. 777 F.2d 1224 (7th Cir. 1985). *Toney-El* addressed a situation where the prisoner was alleging only a miscalculation of sentence, and state court remedies were available and adequate. *Id.* at1228. The Complaint, however, alleges more than a miscalculation. This Complaint alleges that Defendants worked to deprive Plaintiff of any state court remedy by misleading those courts into believing that he was correctly incarcerated. (Dkt. 30, ¶ ¶1, 31.) Because Plaintiff alleges that the procedure used by Defendants was flawed, his due process claims should be able to proceed. *See Willis v. Tejeda*, 14 CV 9150, 2016 U.S. Dist. LEXIS 159811 *12-13 (Nov. 18, 2016, N.D. Ill.) (permitting a due process claim to proceed past a motion to dismiss where the prisoner was challenging the process by which his sentence calculation was reviewed).

### 2. Plaintiff's False Imprisonment Claim (Count II) Is Timely.

Defendants claim that Plaintiff's false imprisonment claim was filed beyond the statute of limitations and should therefore be dismissed. (Dkt. 33, pg. 8.) Dismissal of claims as untimely at the initial pleading stage is an aggressive step because the statute of limitations is an affirmative defense that the complaint need not anticipate or overcome. *Sidney Hillman Health Center v. Abbott Laboratories, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) ("As long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial) . . . ."). Generally, claims brought pursuant to section 1983 borrow the Illinois two-year statute of limitations on personal injury actions in 735 ILCS 5/13-202. *Liberty v. City of Chicago*, 860 F.3d 1017, 1019 (7th Cir. 2017).

When a claim begins to accrue depends upon the type of claim asserted. *See Manuel v. City of Joliet*, 137 S. Ct. 911, 916, 921 (2017) ("In applying, selecting among, or adjusting common-law approaches, courts must closely attend to the values and purposes of the constitutional right at issue."). As *Manuel* explains, to determine the date of accrual, courts should look to the common law of torts because section 1983 creates a "species of tort liability." *Id.* (citation and quotations omitted). Generally, "[l]imitations begin to run against an action for false imprisonment when the alleged false imprisonment ends." 2 H. Wood, LIMITATION OF ACTIONS § 187d(4), p 878 (rev. 4th ed. 1916); *see also* 4 RESTATEMENT (SECOND) OF TORTS § 899, Comment c (1977). Plaintiff's false imprisonment did not end until

July 2017. Therefore, Plaintiff's claims should not have begun accruing until July 2017.

Even if Plaintiff's claims started accruing earlier, they could not have begun accruing until the Illinois Appellate Court ruled in June 2017 that he was being wrongfully detained. (Dkt. 30-2.) Until the Illinois appellate court ruled in Plaintiff's favor, the trial court had ruled that he was lawfully detained and had no civil claims against the Defendants. *Cf. Heck v. Humphrey,* 512 U.S. 477, 486 (1994) ("We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution."). Because Plaintiff's claims did not exist until the Illinois appellate court's ruling, it would be inconsistent with the values and purposes of the constitutional right to be free from continued detention to conclude that such claims start accruing before his detention was declared improper by a court.

Defendants rely on cases where the plaintiff challenged both the arrest and entire detention to assert that Plaintiff's claims of continued detention should be dismissed. *Wallace v. City of Chicago* examined the accrual of a false *arrest* claim, not a false *imprisonment* claim, in the context of a challenge to the *entire* term of imprisonment. 440 F.3d 421, 425-26 (7th Cir. 2006). Unlike *Wallace*, Plaintiff is not challenging his arrest, or his initial period of imprisonment. Rather, Plaintiff

challenges his continued detention after he had served his sentence. A cause of action alleging Plaintiff's continued detention was improper cannot accrue until proceedings terminated in his favor. *See Bolden v. City of Chicago*, No. 17 CV 417, 2017 U.S. Dist. LEXIS 203638, at *21 (N.D. Ill. Dec. 12, 2017) ("And because a cause of action cannot accrue before all of the elements have occurred, those circuits have reasoned that a Fourth Amendment continued-detention claim does not accrue until the proceedings have terminated in favor of the accused."). Because the proceedings did not terminate in Plaintiff's favor until June 2017, Plaintiff's claims are timely.

Further, Defendants contend that Plaintiff has not demonstrated that the Defendants played a role in his false imprisonment. (*Id.*) The Complaint pleads sufficient facts to show that the Defendants were responsible for holding him in custody 902 days past his release date. (Dkt. 30, ¶¶ 30, 32-34, 39-40.) Together, the Defendants miscalculated Plaintiff's sentence, refused to correct the error despite repeatedly being advised of it, and argued to several courts that Plaintiff was properly detained. (*Id.*) These allegations are sufficient to show the Defendants' involvement in Plaintiff's unlawful detention.

### 3. Defendants Were Deliberately Indifferent To Their Violation of Plaintiff's Eight Amendment Constitutional Rights (Count III).

Defendants allege that Plaintiff has not stated sufficient facts to show that Defendants Baldwin, Pierce, or Melvin were personally involved in the Eighth Amendment violation. (Dkt. 33, pg. 10.) An individual defendant can be liable if they either cause or participated in a constitutional deprivation. *Hinsdale v.*

*Westchester*, 15C 4926, 2017 U.S. Dist. LEXIS 36597 *12-13 (March 15, 2017, N.D. Ill.) A supervisory defendant can have personal liability if they "acquiesced in some demonstrable way to the alleged constitutional deprivation," or if the "conduct causing the constitutional deprivation" occurred at their "direction or with [his] knowledge and consent." *McQueen v. City of Chi.*, 803 F.Supp.2d 892, 901 (N.D. Ill. 2011) (citations omitted). Here, the Complaint pleads enough facts to demonstrate that Defendants Baldwin, Pierce, or Melvin were involved in the deprivation of Plaintiff's Eighth Amendment rights.

    Defendant Pierce was responsible for reviewing Plaintiff's placement in segregation, and signed off on the order directing him to be held there for years. (Dkt. 30, ¶ 40.) Defendants Melvin and Baldwin were responsible for overseeing the review and evaluation of not only the IDOC Counseling Summaries, which incorrectly calculated Plaintiff's time, but also the repeated grievances that he filed. (Dkt. 30, ¶¶ 5-6, 32-34.) These three Defendants either acquiesced to the continued wrongful incarceration or consented to that wrongful incarceration continuing.

    Defendants also argue that their conduct was not "deliberately indifferent" in violation of the Eighth Amendment to Plaintiff's pleas to be free. (Dkt. 33, pg. 11.) Defendants behavior was beyond reckless. Even the States' Attorney conceded that Plaintiff had served his time. (Dkt. 30, ¶ 27.) Despite Plaintiff's pleas to correct their error, Defendants wrongfully held Plaintiff in custody for 902 days and told courts that he was properly detained. (Dkt. 30, ¶ 38.) Defendants also deliberately placed the Plaintiff in solitary confinement, making it more difficult for him to

advocate for his freedom. (Dkt. 30, ¶ 39.) It took an order from the Illinois appellate court, requiring Plaintiff's immediate release from prison for Plaintiff to gain his freedom. Even in this action, Defendants continue to assert that Plaintiff's incarceration was proper because he was merely seeking a discretionary "early release," despite the Illinois appellate court's decision to the contrary. Defendants' conduct was beyond reckless and amounts to deliberate indifference.

4. **Plaintiff's Section 1983 Failure to Intervene Claim (Count IV) Should Not Be Dismissed, Because He Alleged Sufficient Facts to Show Defendants' Personal Involvement.**

To establish a claim of failure to intervene, Plaintiff must show that the Defendants: (1) knew that a constitutional violation was committed; and (2) had a realistic opportunity to prevent it. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). The Complaint contains sufficient allegations to establish both of these elements.

Defendants argue that Plaintiff has not plead sufficient facts to show that any of the Defendants were personally involved in the violation.[1] (Dkt. 33, pg. 4.) The Complaint alleges that Defendant Sigler was responsible for creating the erroneous Counseling Summary which miscalculated his time. (Dkt. 30, ¶¶ 30-32.) Defendants Hadley and Pierce were responsible for placing Plaintiff in segregation. (Dkt. 30, ¶¶ 39-40.) Defendants Melvin and Lamb were both wardens of the facilities where Plaintiff was housed and responsible for supervising the employees who ignored the grievances regarding his detention. (Dkt. 30, ¶¶ 6, 8.) Defendant

---

[1] Defendants claim that Baldwin and Lamb were not working at Pontiac when the Plaintiff claims he was wrongfully held beyond his sentence, so they cannot be held liable. (Dkt. 33, pg.5.) That assertion is not contained in the Second Amended Complaint, and is thus, an improper factual assertion meant to establish that Defendants are not liable.

Baldwin is the Director of the Illinois Department of Corrections and responsible for all defendants. (Dkt. 30, ¶ 5.)

Plaintiff repeatedly wrote grievances about his IDOC Counseling Summaries and submitted them to the Defendants at both Stateville and Pontiac Correctional Centers. (Dkt. 30, ¶¶ 30-34.) Plaintiff's grievances correctly calculated the amount of time he should have served. (*Id.* ¶ 33.) The grievance process placed the Defendants at both locations on notice that Plaintiff was being unconstitutionally held beyond his sentence. For example, the ticket which placed Plaintiff in segregation, was created by Defendant Hadley and verified by Defendant Pierce. (Dkt. 30, ¶¶ 39-40.)

These are not formulaic recitations of the elements of a cause of action. These allegations explain that the Defendants were on notice that a constitutional violation was occurring, and that they had realistic opportunities to intervene and remedy the violations.

5. **Plaintiff's Indemnification Claim (Count V) Does Not Violate the Eleventh Amendment.**

Defendants contend that Plaintiff's indemnification claim is actually a claim against the State of Illinois for money damages, which is prohibited under the Eleventh Amendment. (Dkt. 33, pg.4.) The claims here are brought against individuals, and seeking those individuals' right to indemnification is different than a claim for money damages directly against the State.

Illinois courts have concluded that indemnification claims do not implicate the state's immunity as a sovereign. Because federal courts look to state immunity

rules in resolving claims against state actors, these Illinois decisions should be followed here. *See Murphy v. Smith*, 844 F.3d 653, 656 (7th Cir. 2016).

Illinois courts have held that state liability is different and distinct from indemnity. Cases in which the State of Illinois is subject to direct liability must be heard in the Illinois Court of Claims, but cases involving the State's obligation to indemnify its employees are not relegated to the Court of Claims because indemnity is not direct liability and does not implicate sovereign immunity. *See Janes by First Nat'l Bank v. Albergo*, 254 Ill.App.3d 951, 965-66 (1st Dist. 1993) ("While suits which could subject the State to liability must be heard in the Court of Claims, the State's obligation to indemnify its employees for liability incurred by them does not constitute the State's assumption of direct liability); *see also Jenkins v. Lee*, 209 Ill.2d 320, 377, n.2 (2004) (commenting favorably about "the distinction between liability and indemnification" and how cases have concluded the later does not implicate sovereign immunity). In addressing the difference between liability and indemnity, the Illinois Appellate Court explained that "the decision of [Illinois State University] to indemnify its employees does not deprive the circuit courts of subject matter jurisdiction over claims otherwise properly brought in the circuit court." *Kiersch v Ogena*, 230 Ill.App.3d 57, 63-64 (4th Dist. 1992) ("[P]laintiff correctly points out that defendant confuses liability with indemnity--that is, defendant tries to equate ISU's decision to indemnify its employees with direct liability of ISU for its employees' negligent conduct. The two are not the same . . . ."). Thus, the

sovereignty of Illinois and thereby the Eleventh Amendment, is not implicated by a claim for indemnity.

Like *Kiersch*, Plaintiff is seeking indemnification against the individuals. Plaintiff has brought claims against six people who were employed by the Illinois Department of Corrections. The Illinois State Employee Indemnification Act provides that if a judgment is entered against a state actor, who caused injury or harm within the scope of their employment, that such judgment can be submitted to the state for payment. *See* 5 ILCS 350/2(e). Count V prays that the Defendants be ordered to invoke their rights to obtain indemnity. (Dkt. 30, pg. 11.) The claim does not seek any relief against the State of Illinois. Rather, the claim seeks a right possessed by the Defendants.[2]

Defendants' rely on *Armato v. Grounds* to support the argument that Plaintiff's indemnification claim should be dismissed. *Armato* addressed whether a state law claim of false imprisonment should be brought in the Illinois Court of Claims. 944 F.Supp.2d 627, 635-36 (C.D. Ill. 2013). Unlike *Armato*, Plaintiff's false imprisonment claim is plead under section 1983 not Illinois law. Nor did the plaintiff in *Armato* appear to have asserted an indemnification claim. Thus, *Armato's* short discussion of a different type of claim does not support dismissal of the indemnification claim asserted here.

---

[2] Indemnity is similar to insurance, and State liability would likewise not be implicated if Defendants were covered by an Illinois State insurance policy. *See Watson v. St. Annes Hospital*, 68 Ill.App.3d 1048, 1053 (1st Dist. 1979) (finding that the existence of State professional liability insurance did not render the state directly liable and implicate sovereign immunity).

## **Conclusion**

The motion to dismiss should be denied because Plaintiff has alleged sufficient facts to establish that Defendants detained Plaintiff 902 days beyond his sentence in violation of his Constitutional rights.

                                  **PLAINTIFF WALTER BRZOWSKI**

                                  By: /s/ Victor P. Henderson
                                        One of his Attorneys

Victor P. Henderson
Christopher W. Carmichael
Alexandra H. Roffman
**HENDERSON PARKS, LLC**
140 South Dearborn, Suite 1020
Chicago, IL 60603
Tel.: (312) 262-2900
vphenderson@-henderson-parks.com
ccarmchael@henderson-parks.com
aroffman@henderson-parks.com

- 14 -

**CERTIFICATE OF SERVICE**

The undersigned certifies that on **September 10, 2018**, the foregoing **Response to Defendants' Motion to Dismiss** was electronically filed with the Clerk of the United States District Court for the Northern District of Illinois by filing through the CM/ECF system, which served a copy of the foregoing upon all counsel of record.

By: /s/ Victor P. Henderson