**FILED**

SEP 1 4 2018 *pb*

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

### IN THE UNITED STATES DISTRICT COURT FOR ILLINOIS
### NORTHERN DISTRICT    EASTERN DIVISION

WALTER J. BRZOWSKI
    Plaintiff

v.

**CASE NO. 1:17 CV-09339**

IL. DEPARTMENT OF CORRECTIONS,
WARDENS MICHAEL MELVIN, GUY PIERCE,
NICHOLAS LAMB, and IDOC Dept. Supervisor,
BRENDA L. SIGLER, and IDOC Corr. Officer,
DAVID V. HADLEY
    Defendants

Hon. Matthew F. Kennelly
Presiding

### ADDENDUM TO FILED "FIRST AMENDED COMPLAINT"

NOW COMES The Plaintiff, Walter J. Brzowski on his own accord to do so, and in pursuant to Rules#5(a) and #15(a)(d) of the Federal Rules of Civil Procedure as to duly inform the U.S. Northern District Court for Illinois as to some of the underlying basis' as to what was the REAL REASON(s) he was unjustifiably incarcerated in lengthy IL. Dept. of Corrections imprisonment for all those 903 days, (*and then some*), upon the following facts arising from the 12th Circuit Court of Will County Illinois:

1) On May 23, 2018, the Plaintiff's Lawyers, (Victor Henderson and Alexandra Roffman), filed a meritorious: "First Amended Complaint" as to enhance U.S. private Citizen, Walter J. Brzowski's initial "Tort Complaint" on December 28, 2017 from 721 wrongfully imprisoned days up to 903 days by the legal evidences disclosed therein;

2) Since ('Client'), Walter J. Brzowski was forced to experience all of this lengthy and **un**precedented amount of time upon a frivolous class IV felony case(s) originating in the County of Will on September 16, 2010, (Case no. 10 CF-1923), and on December 3, 2010, (Case no. 10 CF-2494), of both cited: "violation of order of protection" charges, he acquired first-hand experienced knowledge of the total underlying make-up of these two Will County criminal cases from their initial creations;

3) Plaintiff, Walter J. Brzowski elects to enlighten the U.S. Federal District Court for Illinois, Eastern Division upon these underlying basis for the unwarranted creation of these two collateral Will County class IV felony cases, which will reveal that their both without a valid enforceable charging instrument;

4) On September 16, 2010, the Will County States Attorneys Office elected to obtain a arrest Warrant against Cook County IL. 'defendant', Walter J. Brzowski citing: "viol. of order of protection" due to (father), Walter J. Brzowski sending 'belated Happy Birthday Cards' to his unconstitutionally alienated two innocent Sons, [Brandon and Eric Brzowski], via the U.S. Postal Mail Service, that created criminal case no. 10 CF-1923;

5) On November 7, 2010, Cook County IL. defendant, Walter J. Brzowski posted the necessary 10% cash bail amount, ($1,500.00) of the set $15,000.00 bond by the Will County 12th Circuit Court, (Hon. Marzell Richardson), and was released soon thereafter;

6) Now again on December 3, 2010, the Will County States Attorneys Office elected to obtain another arrest Warrant against Cook Co. 'defendant', Walter J. Brzowski seeking $30,000.00 upon another cited: "viol. of order of protection" when he sent to his [legal Wife], Cook County Petitioner, Mrs. Laura A. Brzowski filed legal Documents into Cook County divorce case no. 01 D-14335, informing her of a pending Court calendar set date of December 10, 2010 which he is legally allowed to undertake, that created 2nd class IV felony case no. 10 CF-2494; He posted the necessary 10% cash bond ($3,000.00) on December 7, 2010, securing his release from Will Co. Sheriff custody; (Fact);

7) Both of these Will County class IV felony cases used as a foundation for their charging instrument a prior entered 'extended order of protection' on May 1, 2009 by *ex parte* design, (Hon. Marilee Viola), upon civil case no. 07 OP-0595, (Laura A. Brzowski v. Walter J. Brzowski);

8) Upon a ill-advised 'plea-deal arrangement', 'defendant Walter J. Brzowski pled 'guilty' for a one count felony conviction on July 22, 2015, (Case no. 10 CF-1923), in exchange for criminal case no. 10 CF-2494 being *nolle prosequi*, and for his release from IL. Dept. of Corrections imprisonment to commence his lengthy 4 year M.S.R. term which suspiciously never commenced on or after July 28, 2015;

9) Defendant, Walter J. Brzowski duly filed a timely: "Motion to Withdraw Plea of Guilty and Vacate Judgment" into the criminal Record on August 20, 2015 pursuant to IL. Supreme Court Rule 604(d), since he possessed a meritorious Affirmative defense worthy enough to proceed to Trial, which was subjectively denied by the post-Trial Will County Court, (Hon. Rick A. Mason) on October 7, 2015;

- 2 -

10) Due to a procedural error committed by Walter Brzowski's assigned Will County Public Defender Counsel, Edward Jaquays on October 28, 2015, the Third District IL. Appellate Court vacated the errant October 7, 2015 post-Trial 'denial order' on August 20, 2018 with instructions back onto the Will County post-Trial Court, (App. no. 03-16-0289);

11) Plaintiff Walter J. Brzowski will now reveal through applicable Laws and supportive evidences that both the 'extended, no contact order of protection' entered on May 1, 2009 by suspicious *ex parte* design as well as the whole civil Will County order of protection case no. 07 OP-0595, had uncured jurisdictional and procedural defects strewn therein that would render them all **null** and **void**, that Cook County private Citizen cannot violate in the County of Will in September and December, 2010, (*Emphasis added*);

12) Prior to May 1, 2009, with Petitioner, Mrs. Laura A. Brzowski receiving a unsubstantiated 'Emergency/Plenary orders of protections' on April 12, 2007 and May 3, 2007, she elected to extend this unproven-converted 'Plenary, no contact order of protection' on May 1, 2009, since it was terminating after its two year duration;

13) In order for the Will County Petitioner, Mrs. Laura A. Brzowski to lawfully extend this expiring 'plenary, no contact order of protection', she would have to duly adhere to IL. Statute 750ILCS 60/220(e), *et seq.* by filing a 'Notice of Motion" and a accompanying: "Motion to Extend Order of Protection" (with merit), into case no. 07 OP-0595, and serve it onto the opposing respondent, Walter J. Brzowski within a reasonable amount of time before the set terminating date of May 1, 2009, (Fact);

14) Will County Petitioner, Mrs. Laura A. Brzowski willfully failed in her movant, onus duty by NOT filing: "anything" into the Record of case no. 07 OP-0595 *before* May 1, 2009, depriving the Cook County IL. respondent, Walter J. Brzowski to be properly notified so he could be afforded an opportunity to appear and defend his worthy defensive cause against all of his legal Wife's **un**proven allegations she made onto the Will County Circuit Court on April 12, 2007 and May 3, 2007, (Hon. J. Jeffrey Allen);

15) By the 'lack of proper served Notice' principle by the Will County Petitioner onto the Cook County IL. 'respondent' prior to the set terminating date of May 1, 2009, would indeed **in**validate and *nullify* the effects of this *ex parte*: 'extended, no contact order of protection' outright, (Fact);

16) "Illinois procedural rule under which action may be dismissed if the petitioner fails to exercise due diligence to obtain service on the respondent could be applied to support dismissal of action which was initially brought in Illinois State court, and subsequently removed to Federal court", {*Romo vs. Gulf Stream Coach Inc.* (C.A. 7 IL. 2001), #250 F. 3d 1119}; and,

17) "If a respondent has not been served properly and has not appeared to defend the cause, an order entered against [him] in the proceeding is void ab initio, regardless of whether [he] had actual knowledge of the proceeding", {*Charter Bank & Trust vs. Novak,* #218 IL. App. 3d 548, #161 IL. Dec. 271, #578 N.E. 2d 629, (2nd Dist. 1991}; and,

18) "A judgment rendered after service of an invalid summons is void", {*Schorsch vs. Fireside Chrysler-Plymouth, Mazda Inc.* #172 IL. App. 3d 993, #123 IL. Dec. 230, #527 N.E. 2d 693, (2nd Dist. 1988};

19) "Even though respondent and his attorney were present at the hearing, reversal of the order was required where there was no affirmative indication of the Record that the respondent was served with a notice indicating the time and place of the Hearing on the new petition for this involuntary admission", {*People v. Plank,* #169 IL. App. 3d 411; #523 N.E. 2d 614, (4th Dist. 1988};

20) "The purpose of the due process clause of the State Constitution, is to protect every citizen in his personal and property Rights against the arbitrary action of any person or authority", {*Pure Oil Co. vs. City of Northlake,* #140 N.E. 2d 289, #10 Il. 2d 241, (Supreme Ct. of IL. Nov. 26, 1956}.

21) The *ex parté* entered 'extended, no contact order of protection' on May 1, 2009, is also **in**valid by another uncured defect in that the Will County Family Division Court, (Hon. Marilee Viola) operating on unfounded order of protection case no. 07 OP-0595 lacked its subject matter jurisdiction since such jurisdiction was previously divested into the Third District IL. Appellate Court on September 12, 2008, upon a: "Notice to Appeal", (App. no. 03-08-0783), and the lack of any prior issued Appellate Mandate before May 1, 2009, that would also <u>nullify</u> the *ex parte*, **un**proven 'extended no contact order';

22) The Third District IL. Appellate Court issued its subjective 'affirming order' on August 27, 2009, which that IL. Appellate Court finally issued its Mandate on November 24,

- 4 -

2009, well after the lower Will County Circuit Court entered its: "order of substance" on May 1, 2009 which by Case law precedents, the lower Cir. Court certainly *cannot* do;

23) "Upon filing a notice of appeal, the Circuit Court is divested of jurisdiction to enter any order involving a matter of substance, and the jurisdiction of the Appellate Court attaches instanter", {*Rickard v. Pozdal*, #31 IL. App. 3d 542; #334 N.E. 2d 288, (2nd Dist. 1975};

24) "With the filing of notice of appeal, Trial Court was divested of its jurisdiction to enter an order permitting the filing of further proceedings", {*First Fed. Sav. & Loan Ass'n v. American National Bank and Trust Co.*, #100 IL. App. 2d 460; #241 N.E. 2d 615, (1st Dist. 1968};

25) "Upon the filing of a notice of appeal, the jurisdiction of the reviewing court attaches instantly, and with certain exceptions, the trial court is then deprived of its jurisdiction", {*Farwell Constr. Co. v. Tricktin*, #84 IL. App. 3d 395; #405 N.E. 2d 1051, (1st D. 1980}

26) "The trial court was without jurisdiction when it sought to vacate its order after defendant had filed notice of appeal in a case against city", {*City of Chgo. vs. Myers*, #37 IL. 2d 470; #227 N.E. 2d 760, (1967}; and,

27) "The filing of a notice of appeal causes the jurisdiction of the reviewing court to attach instanter and deprives the trial court of jurisdiction, and any pleadings filed after the filing of a notice of appeal are a nullity and cannot be considered", {*Hecht vs. Hecht*, #49 IL. App. 3d 334; #7 IL. Dec. 169; #364 N.E. 2d 330, (1st Dist. 1977}; and,

28) "Once a notice of appeal is filed, trial court is divested of jurisdiction to enter any order involving matter of substance, and jurisdiction of Appellate Court attaches instanter; trial court is thereby restrained from entering any order", {*In re: Marriage of: Petramale,* (App. 2d Dist. 1981), #58 IL. Dec. 537; #102 IL. App. 3d 1049; #430 N.E. 2d 569};

29) As to duly support this legal contention offered by the Plaintiff, he brings forth pertinent oral information from Will County Judge Viola herself: On January 28, 2010, Hon. Judge Marilee Viola upon being informed of the pending Illinois appeal into the 3rd District Appellate Court stated to Walter J. Brzowski in open Court, (Trial case nos. 05 CM-3968, *et al.*; Appeal nos. 03-08-0445, cons.): *"I need to tell you right now this Court has absolutely no jurisdiction to hear any of those Motions because your Case is up on Appeal"*; and,

30) Hon. Judge Viola continues: *"This Court has absolutely no jurisdiction to hear anything; will not hear anything. Your Case has been appealed in Ottawa; as a result, I cannot do anything";* and,

31) On February 17, 2010, Hon. Judge Marilee Viola upon being informed of the *other* Civil Case, (No. #07 OP-595) also being up on current appeal, (App. Case No. #03-09-0602) stated again: *"Your Case is in the Third District Appellate Court and I cannot do anything as a result";* and,

32) Now if that is true and correct, by her own statements made by the Will County Judge in a Court of Law, she would be *also* deprived of the "subject matter jurisdiction" on May 1, 2009 to award Mrs. Laura A. Brzowski an *ex parte* 'extended order of protection', ['order of substance'], since on such date, the required: 'subject matter jurisdiction' was firmly vested within the 3rd District Appellate Court on such relevant date, (App. Case No. #03-08-0783), and would certainly hold the 'extended *ex parte* Order of Protection' **void** due to: *"this Court has absolutely no jurisdiction to hear anything; will not hear anything",* depriving ('Wife'), Mrs. Laura A. Brzowski to also apply *any* oral testimony on May 1, 2009 to the lower 12th Circuit Illinois Court as well, (Fact).

33) By Judge Marilee Viola violating her own "words" in a Court of Law as to allow Laura A. Brzowski to move the 12th Circuit Court of Will County, Illinois, without its: "subject matter jurisdiction" on May 1, 2009, and without the served-notified Respondent, (Walter J. Brzowski) to be in Court on such date, obstructing his Right to: "confront his accuser", constitutes a denial of Fundamental Justice and violates IL. Supreme court Rule #63—Canon #3, rendering it **null** and **_void_**, (Fact).

34) "A judgment or decree is only correct when the court proceeds according to the established modes governing the class to which the case belongs, and does not transcend in the extent and character of its judgment or decree the law or statute which is applicable to it", {*Windsor vs. McVeigh*, #93 U.S. 247; U.S. vs. Walker, #109 id. 258;

35) "Where a court has assumed to enter a decree or judgment which goes beyond the limits of the jurisdiction and transgresses the Law, or impeaches a Right, the decree or order is void", {*Armstrong vs. Obucino*, #300 IL. 143, (#16 R.C.L. 7, Dec. 1921}.

36) "An order issued by a court will nevertheless be void, if the court had no power to issue the order, for the order itself is beyond the jurisdiction of the court", {*Ex parte Fisk*, #113 U.S. 713, 719, #5 S.Ct. 724, #28 L.Ed. 1117, (1885}; and,

37) Will County order of protection case no. 07 OP-0595 was created by malicious means by Petitioner, [legal wife], Laura A. Brzowski on April 12, 2007 as to carry over from the County of Cook a terminating 'plenary, no contact order of protection' set for April 27, 2007, upon [thrice removed; *unproven*], divorce case no. 01 D-14335;

38) Cook County IL. 'respondent' Walter J. Brzowski to the Cook County divorce fiasco action no. 01 D-14335 can accurately show that the civil Cook County divorce action is without both merit and jurisdiction pursuant to IL. Statutes 750ILCS 5/403(f), 5/401 (a) (b), Cook County Cir. Rule 13.7(a); *and* Federal Titles of 28 USC § 1446(d) and § 1447 (c)(d) since August 4, 2002, (Federal Removal case no. 02 C-6219, *et al.*);

39) The Plaintiff, Walter J. Brzowski can accurately show through the operation of those above cited State and Federal Laws and supportive legal evidences, that the Cook County Domestic Relations Court operating on unproven civil divorce no. 01 D-14335 lacked its necessary subject matter jurisdiction by movant (respondent), Walter Brzowski creating two Federal Removal cases on August 30, 2002, (No. 02 C-6219) and again on April 23, 2003, (No. 03 C-2685) and their corresponding filed: "Notices of Removals" into the Cook County divorce Record on September 4, 2002 and on April 23, 2003, which pursuant to Federal Statute 28 USC § 1446(d), deprives the Cook County State Court from proceeding forward unless and until full procedural compliancy to Title 28 USC § 1447(c) by the two invoked Federal Removal Courts is duly accomplished, (Fact);

40) Upon inspection of the Federal Removal Statute #28 § 1446 (d) states: *"Promptly after filing of such notice of removal of a civil action the defendant/(respondent) shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect removal and the State court shall proceed no further unless and until the case is remanded"*;

41) "If a statute or title speaks clearly to the precise question at issue, the Supreme Court must give effect to the unambiguously expressed intent of Congress", {*Barnhart vs. Walton*, #122 S. Ct. 1256, (2002}.

**REGARDING FEDERAL REMOVAL; EFFECT ON STATE COURT JURISDICTION AFTER REMOVAL**

42) "Jurisdiction normally attaches at the time of filing based upon the pleadings", {*Nilssen vs. Motorola Inc.* #203 F. 3d 782, (2000}; and,

43) "Under Statute, a State Court's power to issue orders with respect to a removed case, terminates upon removal", {*Continental IL. Nat. Bank and Trust Co. vs. Protos Shipping,* #472 F. Supp. 979, (May 14, 1979}; and,

44) "When petition for removal has been filed in Federal District Court...(supra)... State Court loses jurisdiction to proceed further until case is remanded", {*Hartlein vs. Illinois Power Co.* #601 N.E. 2d 720, (II. 1992}; and,

45) "That the State Court had no jurisdiction to pursue the Case once it had been removed to Federal Court", {*People vs. Martin-Tregona,* #28 IL. App. 3d 605, #328 N.E. 2d 362};

46) "Once removal of proceedings to Federal Court are fulfilled and requisite notice accomplished, State Court loses all jurisdiction in the matter", {*Davis vs. Davis,* #229 S.E. 2d 847}; and,

47) "Such State Court jurisdiction was active until removal was finally effected by filing a copy of notice for removal with the State Court clerk, and jurisdiction then became passive or dormant, pending disposition of case in Federal District Court", {*Hornung vs. Master Tank & Welding* Co. D.C.N.D. (1957), #151 F. Supp. 169};

48) "Purpose of statute requiring removing defendant to file a copy of the removal notice with the State Court is to inform the State judge that he can no longer proceed with the case until the Federal Court decides whether it will retain jurisdiction or not", {*Nixon vs. Wheatley,* E.D. Tx. (2005), #368 F. Supp. 2d 635}

49) "When case is removed from State Court to Federal Court, entire action, including all parties and all claims is transferred to Federal Court, and the State Court may not proceed further unless and until case is remanded; Federal Court acquires full and exclusive jurisdiction over case as though it had been commenced in that forum", {*Moore vs. Interstate Fire Ins. Co.* #717 F. Supp. 1193, (1989}; and,

50) "Removal of [civil] action from State to Federal Court halts all further proceedings in the State Court, which thereupon loses jurisdiction unless and until the case is remanded", {*Sands vs. Geller,* (1971), #321 F. Supp. 558}; and,

51) "Once matter is removed to Federal court, State trial court and its judge have no jurisdiction over the matter, and cannot proceed forward upon case", {*Weiser vs. Bierbrouwerij,* (Fla. App. 3rd Dist. 1983), #430 So. 2d 986};

52) "It is universally held that when a Petition for Removal has been filed in Federal Court, and other acts specified by section USC #28 § 1446 (d) have been performed, the State Court loses jurisdiction to proceed further until case is remanded. Even if the basis of the District Court's remand is that the Case was not removable, no action taken by the State Court in the interim can stand. While the point has not been previously arisen in this Court, our Appellate Court has correctly, we consider, so held", {*People vs. Martin-Tregona,* (1975), #28 IL. App. 3d 605, #328 N.E. 2d 362; *People vs. Martin-Tregona,* (1976), #36 IL. App. 3d 482, #344 N.E. 2d 225;

53) "Effect of removal of case to Federal Court was to deprive State Court of jurisdiction to proceed further with any phase of litigation in removed case only, unless and until the case was remanded", {*Saslow vs. State Farm Mut. Ins. Co.* (1963), #224 F. Supp. 965};

54) "Removal to the Federal District Courts of proceedings pending in the State Court deprives the State Court of further jurisdiction in the proceedings", {*In re Wellington Resources Corp.* (Bkrtcy. N.D. Tx. 1982), #20 B.R. 64}; and,

55) "After removal, jurisdiction of State Court absolutely ceases, and State Court loses jurisdiction upon filing of petition for removal", {*Resolution Trust Corp. vs. Bayside Developers,* (C.A. 9, Cal. 1994), #43 F. 3d 1230}; and,

56) "Compliance with form and procedure of removal under this section governing procedure for removal effects automatic removal from State Court to Federal District Court, and such removal stays any further action in State Court until further [remand] order from District Court", {*Wood vs. DeWeese,* (1969), #305 F. Supp. 939};

57) "Removal to a Federal court halts all further proceedings in State court, which thereon loses jurisdiction unless and until the case is remanded", {*Styers vs. Pico, Inc.* (1976), #223 S.E. 2d 656; #236 Ga. 258};

58) "After compliance with this chapter, (USC #28 § 1446 (d), jurisdiction of State court is suspended until there has been a remand", {*Levine vs. Lacy,* (1963), #130 S.E. 2d 443, #204 Va. 297}; and,

59) "Following removal of case to Federal court, case rests only in Federal courts, and can only be restored back to State court by order of remand", {*Otway vs. City of New York*, #818 F. Supp. 659, (1993)}; and,

60) "State Court may not proceed with Case or retain jurisdiction after removal to Federal District Court is effected, and will not be reinvested with jurisdiction until cause is remanded back to State Court", {*State vs. Boone Circuit Court*, #86 N.E. 2d 74, (1949)};

61) Thus, by such controlling factors of Laws (both Statute and Common), Cook County Circuit Case no. 01 D-14335 was legally removed into the U.S. Northern District Court on Sept. 4, 2002, *and* again on April 22, 2003, unless and until procedural Federal compliancy to the Remand Statute: USC #28 § 1447(c) is performed, which would lawfully return the removed subject-matter jurisdiction back onto the State Court.

62) The two U.S. Federal District Courts operating on 1st Removal no. 02 C-6219, (Hon. Ruben Castillo), and on 2nd Removal case no. 03 C-2685, (Hon. James Holderman), wrongfully chose to dismiss these two *REMOVAL* cases on September 9, 2002 and on May 5, 2003 upon their cited: "lack of subject matter jurisdiction" which would be totally repugnant to Federal Statute 28 USC § 1447(c), (Fact);

63) The applicable Federal Law upon this topic is 28 USC § 1447(c) which plainly reads: *"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded….(supra)….A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court; The State court may thereupon proceed with such case"*, which is amplified by:

64) "Removed action must be remanded to State Court upon finding that Federal Court does not have jurisdiction", {*Roberts & Schaefer Co. vs. Merit Contracting Inc*. #901 F. Supp. 1349, (September 29, 1995}};

65) "Any defect in the removal procedure, or lack of subject matter jurisdiction requires a remand", {*Lance vs. Employers Fire Ins. Co*. #66 F. Supp. 2d 921}; and,

66) "Case must be remanded as first order of business, where State Court has jurisdiction but Federal Court lacks both original and removal jurisdiction", {*KCPO Employees Credit Union vs. Mitchell*, #421 F. Supp. 1327, (Oct. 29, 1976}}; and,

67) "Once Federal Court determines that it lacks subject matter jurisdiction over removed case, remand to State Court is mandatory, even if it appears that Remand would be futile", {*Bromwell vs. Michigan Mutual Ins. Co*. #115 F. 3d 208, (1997)}; and,

68) "...(*supra*)...the Federal Court was without subject matter jurisdiction and was required to remand suit back to State Court rather than dismissing it", {*Fent vs. Oklahoma Water Recourses Bd.* #235 F. 553, (December 18, 2000)}; and,

69) "The plain language of USC #28 § 1447 (c) gives no discretion to dismiss rather than remand an action over which the Federal Court lacks subject matter jurisdiction", {see: *Fent vs. Oklahoma,* etc.};

70) "...therefore appropriate procedure was to remand claim to State Court rather than to dismiss claim", {*Smith vs. Wisconsin Dept. of Agriculture*, #23 F. 3d 1134}; and,

71) The U.S. Supreme Court has ruled: "We also take note of the literal words of USC #28 § 1447 (c), which on their face gives no discretion to dismiss rather than remand an action", {*Primate Protection League vs. Tulane Education Fund,* #111 S. Ct. 1710, (1991)}; and,

72) "...and that subsequently, the District Court erred in dismissing the complaints for lack of jurisdiction over remand", {*Scheuer vs. Rhodes*, #416 U.S. 232, #40 L.Ed. 2d 90, #94 S. Ct. 1683};

73) "Therefore the District Court erred when it dismissed the matter rather than to remand it back to the State Court", {*Bromwell vs. Michigan Mutual Ins. Co.* #115 F. 3d 213, (3rd Circuit, 1997};

74) The Federal remand Title distinctively declares: '*shall be remanded*' which is highly construed as a mandatory obligation imposed onto the U.S. District Court for proper, procedural effect:

75) "The word '*shall*' indicates a mandatory obligation, unless the context indicates otherwise", {*People vs. Richardson*, #470 N.E. 2d 1028, (Il. 1984}; [note: nothing in Fed. Title USC #28 § 1447(c) indicates "otherwise", by which compliancy is greatly enhanced for proper effect].

76) *From same Precedent:* "The Phillips decision indicated to the Legislature that the court did not construe '*may*' as placing a mandatory obligation on the trial judge. In this context, the purpose of the amendment must have been to remove discretion from the

judge..(*supra*)..and the term '*shall*' must therefore be construed as mandatory"; {see: People vs. Richardson, *Id.*};

77) Now as to duly reveal that the collateral IL. Cook County Domestic Relations Court operating on [unproven], civil divorce case no. 01 D-14335 was completely devoid of its subject matter jurisdiction pursuant to Federal Statute 28 USC § 1446(d), movant, Walter J. Brzowski filed a: "Motion for Order of Remand Back to State Court" into only the 2nd Federal Removal case no. 03 C-2685 on April 18, 2005, that created a Federal Court Hearing date on April 28, 2005 in front of Judge James F. Holderman, who presided upon

78) On April 28, 2005, Federal District Judge James F. Holderman granted movant, Walter J. Brzowski's filed: "Motion for Order of Remand" and entered only a 'Docket Text Entry Order' on this date, stating: *"Order case remanded to state court for lack of subject matter jurisdiction"*.

79) The U.S. Northern District Court clerk, [Michael W. Dobbins] failed to abide by U.S. Northern District Rule #LR 81.2.(b) on May 12, 2005, which upon movant, Walter J. Brzowski's own personal intervening accord, obtained the: "Certified Copy of Order of Remand" on June 22, 2005, which he then duly filed it into the collateral Cook County divorce Record on June 23, 2005, which pursuant to both Federal Title 28 USC 1447 (c) (d) and several Case law precedents, reestablishes the Cook County Domestic Relations Court with its jurisdiction afterwards, that also by Case law precedents, **nullifies** several pertinent entered 'judicial acts' by the State Court, (*at the very least*), between April 22, 2003, (2nd Removal date), and June 23, 2005, (filed Certified Remand Order date), that *factually* encompasses the two unfounded: 'Plenary orders of protections' on May 20, 2003, and April 29, 2005, as well as the **un**proven: "Judgment of Dissolution of Marriage" on May 20, 2003:

## EFFECT OF STATE COURT ACTIONS AFTER REMOVAL BUT BEFORE REMAND

80) "After removing case from State Court, jurisdiction of State Court ceases until case is remanded to State Court, and any State Court proceedings on the case after removal, but prior to Remand are void ab initio", {*Remova Pool Fence Co. vs. Roth*, Fla. App. 4th Dist. (1994), #647 So. 2d 1022};

81) "The proceedings in the State Court in the interval between filing and service of the removal notice, and the certified Remand order were void", {*State of South Carolina vs. Moore*, #447 F. 2d 1067, (1967)}; and,

82) "Upon filing of Notice for removal, removal is automatic, jurisdiction of Federal Court is complete, and the State Court jurisdiction ceases or is suspended; generally, any judicial action taken by the State Court after removal is effected but before remand by Federal Court, is null and void", {*Harris vs. State,* Ark. App. (1993), #850 S.W. 2d 41, #41 Ark. App. 207}; and,

83) "State Court action after removal is null and void", {*New York State Nat. Org. for Women vs. Terry,* (S.D.N.Y. 1988), #697 F. Supp. 1324}; and,

84) "Once notice of remand petition is given, the State court must stop all proceedings until a determination on the merits of the removal petition is made in Federal court, and even constructive notice would suffice to deprive the state court of jurisdiction, thus making any further proceedings void", {*Medrano vs. State of Texas,* (C.A. 5 Tx. 1978) #580 F. 2d 803};

85) "...all orders issued by State Court after husband had filed removal proceeding in Federal Court, were void", {*Davis vs. Davis,* #229 S.E. 2d 848};

86) "Once removal procedure has been carried out, action in State Court is automatically stayed, and any proceedings there prior to Federal Remand Order are absolutely void, despite subsequent determination that removal petition was ineffective", {*Cavanagh vs. Cavanagh,* (1977), #380 A. 2d 964, #119 R.I. 479}; and

87) "While petition for removal is pending, any subsequent proceedings in state trial court are void, until cause is remanded by Federal Court", {*Fossey vs. State,* (1970), #258 N.E. 2d 616, #254 Ind. 173}; and,

88) "Every order made in State court following removal is void ab initio, even if it is eventually determined that the removal was improper", {*Hyde Park Partners, L.P. vs. Connolly*, #839 F. 2d 837, (1988)}; and,

89) "Once removal procedures are completed by the filing of the notice of removal in state court, state court jurisdiction ends, and any further action in State court is void", {*Tarbell vs. Jacobs,* #856 F. Supp. 101, (1994)}; and,

90) "Further litigation in State court of action that has been removed to Federal court, but which Federal court has never remanded, is improper", {*Allstate Ins. Co. vs. Preston,* #842 F. Supp. 1441, (1992).

91) Since the Cook County: "Judgment of Dissolution of Marriage", and the attaching 'plenary orders of protections' that were entered on May 20, 2003, and April 29, 2005, are factually between these two key, relevant dates, which by the Laws disclosed herein, renders it/(them) all **void** citing: "want of jurisdiction":

92) "Where a divorce decree was void because court lacked jurisdiction, everything done pursuant to the entry of that decree was a nullity", {*Riddlesbarger vs. Riddlesbarger*, #83 N.E. 2d 382};

93) "Where Trial Court had no jurisdiction because [respondent] filed petition to transfer the cause to Federal Court before Trial commenced in State court, the Trial, verdict, and the Judgment of the State court were void", {*Schuchman vs. State of Indiana,* #236 N.E. 2d 830, (May 16, 1968};

94) "It is a familiar rule that when a court has no jurisdiction of the subject matter, and when lack of jurisdiction appears, the court should decline to proceed further in the cause", {*Hill vs. Daley,* #328 N.E. 2d 142, (1975}; and,

95) "Without subject matter jurisdiction, all orders and judgments issued by a judge are void under the Law, and are of no legal force or effect", {*In the interest of M.V.*, #288 Il. App. 3d 300, #681 N.E. 2d 532, (1st Dist., 1997}; and,

96) "That if the court does not have jurisdiction in the particular case, any order except dismissing the proceeding is void", {*The People vs. Shurtleff*, #355 IL. 210, (02/14/34}.

97) "Finding by the court that it has jurisdiction and that the statute has been complied with is not conclusive, and if Record shows that the State Court did not have jurisdiction of the subject-matter, its attempted judgment or orders are a nullity", {*Albert M. Vidar, et al. vs. Village of Arlington Heights, et al.*, #212 N.E. 2d 507, (Il. App. 1st Dist. 1965}.

98) The First Federal Removal case no. 02 C-6219 was ineptly never procedurally remanded back to the State Court in accordance to Title 28 USC § 1447(c) by the U.S. Northern District Court, Eastern Division, (Hon. Ruben Castillo) at any time after September 9, 2002, which would strongly appear that *it would still* **hold** the subject matter jurisdiction

of (removed), IL. Cook County divorce case no. 01 D-14335 ever since August 30, 2002, nullifying all entered State judicial acts thereto:

99) "District Court retained jurisdiction to [adjudicate] upon motion...(*supra*)...where no formal order of remand had yet been forwarded by federal court clerk to state court", {*State of La. vs. Sprint Communication Co.*, (M.D. La. 1995), #899 F. Supp. 282};

100)    "Narrow exception to the loss of jurisdiction upon remand rule exists where a certified copy of District Court's Remand Order has not yet been mailed to clerk of the State Court, to which case is to be remanded", {*Hubbard vs. Combustion Engineering Inc.* (E.D. Mich. 1992), #794 F. Supp. 221};

101)    "Entry of an order of remand of removed action, and mailing a certified copy to state court, completely divests Federal Court of jurisdiction, and reinvests the State Court with jurisdiction", {*Rosenberg vs. GWV Travel, Inc.* #480 F. Supp. 95, (1979)};

102)    "Federal Court is not completely divested of jurisdiction...until Order of Remand has been entered and a Certified Copy of Order has been mailed to the clerk of the State Court", {*Cook vs. J.C. Penny Co. Inc.*, (N.D. Iowa, 1983), #558 F. Supp. 78}; and,

103)    "Following removal of case to Federal court, case rests only in Federal courts, and can only be restored back to State court by order of remand", {*Otway vs. City of New York,* #818 F. Supp. 659, (1993)}; and,

104)    "After compliance with this chapter, jurisdiction of State court is suspended until there has been a remand", {*Levine vs. Lacy,* (1963), #130 S.E. 2d 443, #204 Va. 297};

105)    "Once the procedure as set forth in the Removal Statute for removal has been followed, and so long as case has not been remanded, any subsequent action by State court is void, even if case was removed improperly", {*State vs. Butler*, (La. 1981), #405 So. 2d 836};

106)    The Cook County entered 'Judgment of Dissolution of Marriage' on May 20, 2003 is also *doubly* **void** due to Petitioner, Mrs. Laura A. Brzowski (by and through her *inept* hired Counsel, Michael T. Tristano) failed to abide by Cook County Cir. Rule #13.7 (a)(c), by *NOT* filing into the Record the required transcribed: "Prove-Ups" of the respondent's marital guilt, (*if any*?), *BEFORE* the entry of this flawed 'Judgment', which also **in**validates this unfounded, worthless State 'divorce decree', at 750ILCS 5/401(a)(b);

107) "The burden is on the Petitioner to establish her right to a divorce on statutory grounds", {*Burch vs. Burch*, C.A. Virgin Islands, #195 F. 2d 799}; and,

108) "To bar a Petitioner for her Right to relief in a divorce action, she must prove a marital offense on the part of the husband which would entitle her to a divorce as she asked for it", {*Schwalb vs. Schwalb*, #282 S.W. 2d 661, #39 TN. App. 306};

109) "A wife charging 'severe mental cruelty' on the part of the husband, has the burden of proving his guilt thereof, and that there is a lack of provocation therefore", {*Standard vs. Standard*, (1969), #247 N.E. 2d 438, #108 IL. App. 2d 240; *Sayad vs. Sayad*, (1960), #169 N.E. 2d 585, #27 IL. App. 2d 250}; and,

110) "Our law favors preservation of the Marriage Estate, and will dissolve it only on sufficient proof of a ground provided in the Divorce Statute", {*People vs. ex rel. Doty vs. Connell*, #9 Il. 2d 390, 394, #137 N.E. 2d 849; *Kinsley vs. Kinsley*, #388 Il. 194, 197, #57 N.E. 2d 449}; and,

111) "Even though the marriage was dead and it was clear that the parties did not intend to renew their marriage relations, parties were not entitled to a divorce where no statutory ground was proved; The law favors the preservation of the marriage estate and will only dissolve it on sufficient proof of a ground provided in the divorce statute; In this case, a statutory ground was not proved", {*Rosenbaum v. Rosenbaum*, #38 IL. App. 3d 1; #349 N.E. 2d 731, (, 1st App. Dist., 1976.};

112) "In some jurisdictions, a divorce will not be granted on a Judgment by default or on pro confesso without proof of a ground for divorce", {*Hamblin vs. Superior Court*, #195 Cal. 364, #233 P. 337, #43 A.L.R. 1509, (1925); *Rasmussen vs. Rasmussen*, #252 Iowa, 414, #107 N.W. 2d 114, (1961}; and,

113) "A wife is not entitled to a divorce without judicial proof of some breach of the marital duty on the part of her husband as provided by law", {*Hackett vs. Hackett*, #150 N.E. 2d 431, 433};

114) Petitioner, Mrs. Laura A. Brzowski maliciously used the easy, 'petitioner-friendly' IL. Domestic Violence Act to circumvent the lengthy and stringent procedures outlined within the IL. Marriage and Dissolution of Marriage Act to gain a immoral advantage in her *un*warranted Cook County divorce case as to swiftly acquired full possession of their gathered Marital Property, (Alsip IL. 60803) *and* full parental custody over their two

innocent Children, [Brandon and Eric Brzowski], as to by-pass IL. Statutes 750ILCS 5/503(b)(c) and 5/606(a) *without* any developed, separate Court evidentiary Hearings;

115)     "The primary purpose of the Domestic Violence Act is to aide victims of domestic violence and prevent further abuse, not to resolve issues of visitations and custody", {*Wilson vs. Jackson,* (App. 3rd Dist. 2000), #245 IL. Dec. 750; #312 IL. App. 3d 1156; #728 N.E. 2d 832}; and,

116)     "The Domestic Violence Act is not the appropriate vehicle for resolving custody issues"; (*supra*), "Nevertheless, based on this Record, we believe that Kathryn misused the Domestic Violence Act for the purpose of attempting to alter Ross's visitation with Laine", {*Radke v. Radke*, 349 IL. App. 3d 264; 812 N.E. 2d 9, (3rd 2004};

117)     "Robert has not advanced any reason nor can we find one, to justify his proceeding under the Domestic Violence Act rather than the Marriage Act; Whatever the relief he sought – extended visitation, injunction or custody – he could have received under section 610 of the Marriage Act; To approve the procedure followed in this case would be an open invitation to parties disappointed in a custody dispute to file a separate action under the Domestic Violence Act and call it something other than a claim for custody; [i]n this case…the Domestic Violence Act was misused and was a subterfuge to circumvent the requirements of the Marriage Act", {*In re Marriage of Gordon,* #233 IL. App. 3d 617 at 648; #599 N.E. 2d 1151 at 1172, (1st Appellate Dist. 1992};

118)     Also, upon close inspection of the Defendant's filed: "Defendants' Motion to Dismiss Plaintiff's Complaint" on April 23, 2018 is quite frivolous in that their assigned Counsel, Colleen M. Shannon is attempting to misguide this Federal District Court upon a dismissal through the inapplicable 11th Amendment principle of: "immunity of the State actors herein" which cannot be allowed to stand, since the named State Defendants clearly acted beyond their limited scope of authority, and willfully violated the Plaintiff's Fifth, Eighth and Fourteenth Amendment Rights, by such revealed lengthy IL. over-imprisonment, that holds then accountable for their unconstitutional actions taken against him, depriving 'them' to be shielded by this inapplicable 11th Amendment claim, (Fact);

119)     Thus, it could be well asserted by the Plaintiff, Walter J. Brzowski, that by a 'comedy of errors' committed by the Will County civil and criminal Courts, by the Cook County Domestic Relation Court, *and* by the collateral U.S. Federal Northern District

Courts, he was (*and still is*), being heavily violated of his Constitutional due process and parental Rights which in turn, has unjustifiably rendered him in lengthy unlawful Cook and Will County Sheriff and IL. Dept. of Corrections jails/prisons, and has denied him of his (intact) fatherhood Rights to his two innocent natural Sons, [Brandon and Eric Brzowski] for now over 15½ long years, that has inflicted irreparable injury to his parental Rights, as well as denying him his Fifth and Fourteenth Amendment Rights to his fair share of his gathered marital property with his [lawful wife], Laura A. Brzowski, all without any separate evidentiary Hearings at the Cook County Court level, violating IL. Statutes 750ILCS 5/606(a) and 5/503(b)(c), which the Judicial System is **NOT** enacted to undertake against a innocent, U.S. private Citizen!

**WHEREFORE**, The Plaintiff, Walter J. Brzowski now elects to alert this U.S. Northern District Court for Illinois, Eastern Division through these **119** points, the whole criteria and underlying make-up of his lengthy, illegal State of Illinois incarcerations upon these frivolous Will County criminal cases, (*inter alia*), that now strongly appear to lack merit and a prosecutorial basis to pursue against him since September 16, 2010, and as to present a clear picture of what he un-constitutionally endured throughout (removed *and* <u>unproven</u>), Cook County case no. 01 D-14335, which should enlighten this U.S. Federal District Court to take the necessary action(s) to instill the proper Fundamental Justice onto all State Court 'Actors' who willfully inflicted all this irreparable damage onto this U.S. private Citizen *without* a legal reason to do so; The Plaintiff also highly persuades this now enlighten Federal District Court to incorporate additional IL. State Defendants onto this opened U.S. Federal Tort Action Complaint who strongly appeared to violate his Constitutional Rights upon collateral Cook and Will County civil cases of 01 D-14335 and 07 OP-0595, (as well as upon case nos. 10 CF-1923 and 10 CF-2494), which **cannot** be allowed to stand against this innocent U.S. private Citizen.

## ATTESTATION

I, Walter J. Brzowski, having read and understood the above self-subscribed statements herein certifies it to be true and correct in content and form, and as to where knowledge of Information provided herein is also presumed to be truthful to assert in a Court of Law for proper recourse and justifiable effect.

Dated this 12th day of September, 2018

Walter J. Brzowski

17 MAY 24  PM 1:51

# APPENDIX
## OF
## EXHIBITS

**RECEIVED**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### Eastern Division

APR 1 8 2005

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

LAURA A. BRZOWSKI
    Plaintiff/Federal Defendant )
)
)
   -vs.- )
)
WALTER J. BRZOWSKI )
    Respondent/Federal Petitioner )

**CASE NO. #03 C 2685**

## NOTICE OF MOTION

TO: Circuit Court of Cook County
Domestic Relations Division #802
50 West Washington Street
Chicago, IL. 60602

TO: Mrs. Laura A. Brzowski
Plaintiff/Federal Defendant
11557 South Joalyce Drive
Alsip, IL. 60803

On _____April 28_____, 2005 at ____9:00____ a̶m, or as soon thereafter as
counsel may be heard, I shall appear before Honorable Judge James F. Holderman, or any judge
sitting in his stead, in Courtroom number #2141 at the Dirksen Federal Building, 219 South
Dearborn Street, Chicago, IL. 60604, and present the attached pleading requesting:

"Motion For Order of Remand Back to State Court"

a copy is now served onto you.

Name: Walter J. Brzowski
Attorney for: Litigant to Case
Address: 4941 West Columbus Drive
City/State/Zip: Oak Lawn, IL. 60453
Telephone: #(708) 423-4810

_Walter J. Mprushi_
Signature

---

## CERTIFICATE AND AFFIDAVIT OF DELIVERY PERSONALLY, OR BY MAIL

The undersigned hereby certifies under penalties of perjury as provided by law pursuant to #735ILCS 5/1-109, that
the above Notice and any attached pleadings were ___personally delivered OR ___placed in the U.S. Mail
at:_____, with first class postage prepaid and directed
to all parties of record at the addresses set forth above, on or before 5:00 PM on April 18, 2005

_Walter J. Mprushi_
(Signature)

_WALTER J. BRZOWSKI_
(Print Name)

### MICHAEL W. DOBBINS, CLERK OF THE NORTHERN DISTRICT COURT OF ILLINOIS

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### Eastern Division

LAURA A. BRZOWSKI )
    Plaintiff/Federal Defendant )
     )
    Versus )          **CASE NO. #03 C 2685**
     )
     )
WALTER J. BRZOWSKI )
    Respondent/Federal Petitioner )
     )     Judge James F. Holderman, presiding

# MOTION FOR ORDER OF REMAND BACK TO STATE COURT

NOW COMES Walter J. Brzowski, pursuant to Title U.S.C. #28 @ 1447 (c), now states to this Honorable Federal District Court the following:

1) That on April 22, 2003, Walter J. Brzowski filed into the Northern Federal District Court a Complaint, along with the necessary requisites to create Federal Case No. #03 C 2685; and,

2) That on this date, upon inspection of the filed Civil Cover Sheet, Section V (2) states that the Origin of this Case is removed from State Court, due to violations arising from Domestic Relations Court matters against Walter J. Brzowski Civil and Constitutional Rights, (Exhibit 'A'); and,

3) "That when a Federal Court is properly appealed to in a Case over which it has by law jurisdiction to settle Constitutional controversies, it is the duty to take jurisdiction", {England vs. Louisiana State Board of Medical Examiners, #375 U.S. 411, 461}; and,

4) "The right of a Party to choose a Federal Court when there is a choice, cannot be properly denied", {England vs. Louisiana State Board of Medical Examiners, #375 U.S., 411, 461}; and,

5) That upon jurisdictional removals from the State Court to the Federal District Court affects the State Court from proceeding, until Title USC #28 @ 1447 (c) has been complied with, this is objectively construed to be legally accurate; and,

6) That on April 22, 2003, Walter J. Brzowski filed with the Illinois State Court Clerk a: "Motion For Subject Matter Jurisdiction Removal to the United States Federal Court", etc. served on all Parties on this Date, which completes the requisites for compliancy to Title #28 USC @ 1446, to legally affect such jurisdictional removals, (Exhibit 'B'); and,

7) Along with the Complaint, Walter J. Brzowski filed on April 22, 2003 a: "Supporting Affidavit of Prior Violations of Rights to Affect Subject-Matter Jurisdiction", and upon review of the incorporated 18 Articles clearly proclaims

that the State Court has lost such jurisdiction due to the numerous violations of Walter J. Brzowski's Constitutional Rights, (exhibit 'C'); and,

8) That when there is a violation to a United States Citizen's Constitutional Rights at the State Court level, the Federal Courts become available to such Citizen to bring forth the issues of such Constitutional encroachments, and adjudicate those matters in that legal arena, pursuant to Title USC #28 @ 1441 (b); and,

9) Thus, this was the chosen recourse Walter J. Brzowski undertook on April 22, 2003 to bring forth into the Northern Federal District Court, and transfer jurisdiction from the State Court to the Federal District Court, a legal remedy that was obtainable to Mr. Brzowski; and,

10) "Once removal proceedings to Federal Court are fulfilled, and requisite notice accomplished, the State Court loses all jurisdiction in the matter", {Davis vs. Davis, #229 S.E. 2d 847}; and,

11) That on May 5, 2003 a Minute Order originating from the Federal District Court, [no Judge's endorsement disclosed], dismissed Walter J. Brzowski's filed Complaint on a jurisdictional question; and,

12) Upon inspection of this Minute Order, it is clearly absent of a Remand Order as defined in Title #28 @ 1447 (c), which still negates the Illinois State Court from lawfully proceeding upon Circuit Case No. #01 D 14335; and,

13) That the Federal Clerk, (upon inspection of this Case File on January 28, 2004) failed to: "attach a certified copy of the order of remand shall be mailed by the [Federal] Clerk to the clerk of the State Court. The State Court may thereupon proceed with such case"; and,

14) It is quite evident, by such controlling factors of Law(s) and well understood by such meanings of legal intents that: "A dismissal does not constitute an *automatic remand* back to State Court", when such Order of Remand needs to be applied to in this Federally removed Case; and,

15) "If the federal court later decides that you did not have enough reason to try to remove your case, it is reversible error for the state court to proceed until the case is [remanded] returned to that state court", supported by: {Echevarria vs. Silberglitt, #441 F. 2d 225, 2nd Circuit, (1971); Schuman vs. State of Indiana, #236 N.E. 2d 830, (1968); and,

16) That now, there is a clear and distinct indication, due to the fact of the absence of such Remand Order, the State Court is barred from proceeding lawfully, until such time compliancy of Title USC #28 @ 1447 (c) is fulfilled; and,

17) "State Court may not proceed with case or retain jurisdiction after removal to Federal District Court is effected, and will not be reinvested with jurisdiction

until cause is remanded to State Court", {State vs. Boone Circuit Court, #86 N.E. 2d 75}; and,

18) "When the petition has been filed in the Federal District Court, State Court loses jurisdiction to proceed further until case is remanded; even if basis of District Court's remand is that the case was not removable, no action taken by State Court in interim can stand", {Eastern vs. Canty, #389 N.E. 2d 1160}; and,

19) Even if there is a jurisdictional discrepancy with such removals, Title USC #28 @ 1447 (c) still is necessary for compliance, since it addresses the jurisdictional question within its confines of definitions for the proper, required acts that should have been followed henceforth by the Federal District Clerk; and,

20) (Judicial Notice requested): In Black's Law Dictionary, Seventh Edition, page #1034, states: **Motion to remand**: "In a case that has been removed from state court to federal court, a party's request that the federal court return the case to state court, usually because federal court lacks jurisdiction, or because the procedures for removal were not properly followed", {#28 USCA @ 1447 (c); and,

21) Therefore, Walter J. Brzowski now seeks such: "Certified Copy of a Remand Order" from the Federal District Clerk to the State Court Clerk, granting the legal provisions for the State Court to proceed.

WHEREFORE, Walter J. Brzowski now respectfully prays for the following to this Federal District Court for relief:

A) That this Federal Court issue a: Certified Copy of an Order of Remand back to the State Court Clerk, (Richard J. Daley Center, Chgo. IL. 60602, Room #802), pursuant to Title #28 @ 1447 (c).

## ATTESTATION

I, Walter J. Brzowski, having read and understood the above self-subscribed "Motion", certifies that it is true in content and form, and as to where knowledge of Information is presumed truthful to assert in a Court of Law for proper recourse.

Walter J. Brzowski          4/18/05
                            Date

1

1       IN THE UNITED STATES DISTRICT COURT
          NORTHERN DISTRICT OF ILLINOIS
2            EASTERN DIVISION

3  LAURA A. BRZOWSKI,                      )
                                          )
4              Plaintiff,                  )
                                          )
5      vs.                                 )
                                          )   No. 03 C 2685
6  WALTER J. BRZOWSKI,                     )
                                          )   Chicago, Illinois
7              Defendant.                  )   April 28, 2005
                                          )   9:00 o'clock a.m.

8              TRANSCRIPT OF PROCEEDINGS
9  BEFORE THE HONORABLE JAMES F. HOLDERMAN

10  APPEARANCES:

11  For the Defendant:         MR. WALTER J. BRZOWSKI, Pro Se
12                             P.O. Box #934
                               Worth, Illinois   60482
13                             (708) 704-9187

14

15

16

17

18

19

20

21

22

23

24              COLLEEN M. CONWAY, CSR, CRR
                   Official Court Reporter
25        219 South Dearborn Street, Room 2144-A
                  Chicago, Illinois   60604
                     (312) 435-5594

Colleen M. Conway, Official Court Reporter

1    (Proceedings in open court.)

2        THE CLERK:  03 C 2685, Brzowski versus Brzowski,

3    motion for remand.

4        THE COURT:  All right.  No one appears on this

5    motion.  We will call it later in the call, and hopefully the

6    parties interested will arrive.

7        (Whereupon, the Court heard other matters on his call.)

8        THE CLERK:  03 C 2685, Brzowski versus Brzowski,

9    motion for remand.

10       MR. BRZOWSKI:  Good morning, Your Honor.

11       Good morning, Your Honor.

12       THE COURT:  Good morning, sir.  And you are?

13       MR. BRZOWSKI:  Walter Brzowski.  I've -- I am the

14   respondent and the -- I put myself as the federal petitioner

15   back in, oh, April of 2003.  As you -- I don't know if you

16   got the --

17       THE COURT:  Right.  We called this case earlier, and

18   I thought you might be arriving, and so we held the case

19   over --

20       MR. BRZOWSKI:  Thank you.

21       THE COURT:  -- until you could arrive.

22       MR. BRZOWSKI:  Thank you.

23       THE COURT:  But I need to apprise you that this case

24   was over two years ago.

25       MR. BRZOWSKI:  Yes, I know, and there was -- and I've

Colleen M. Conway, Official Court Reporter

1  been checking the files for a remand order, and the duty

2  developed on the petitioner in the state court, Laura

3  Brzowski, by and through her attorney, Michael T. Tristano,

4  and due to the fact that there -- the absence of a remand

5  order, checking the files in July of 2003 and back again in

6  January of 2004 -- and I read the federal -- the titles and

7  statutes, and it says that the order -- that according to the

8  titles, it has to be remanded back for the state court to

9  proceed --

10           THE COURT:  Okay.  Well --

11           MR. BRZOWSKI:  -- and --

12           THE COURT:  -- what I did in May of 2003 is I

13  dismissed this case for lack of subject matter jurisdiction

14  which automatically causes the matter to be available to the

15  state court --

16           MR. BRZOWSKI:  Well --

17           THE COURT:  -- if you wish to revive it.  I entered a

18  judgment on that on May 5th, 2003, but I will tell you what I

19  will do.  I will enter an order today granting your motion to

20  remand.

21           MR. BRZOWSKI:  Okay.

22           THE COURT:  I don't think I have jurisdiction to do

23  it, but if the state court somehow believes --

24           MR. BRZOWSKI:  Yes, that's --

25           THE COURT:  -- we need to tell them that they have

4

1    the case back, I am happy to do that.

2            MR. BRZOWSKI:  Okay.

3            THE COURT:  I just --

4            MR. BRZOWSKI:  Because I got the federal statutes

5    right here, and it even says here that -- but everything that

6    you just -- it doesn't say nothing about dismissal equals an

7    automatic remand.  I got it -- so, I, mean let's -- I just

8    want to tie up all the legal legalities here.

9            THE COURT:  Okay.  I understand.

10           MR. BRZOWSKI:  Okay.  Thank you.

11           THE COURT:  All right.  Your motion to remand is

12   granted because the Court lacks subject matter jurisdiction,

13   okay?

14           MR. BRZOWSKI:  And then can I have a certified copy

15   or however the --

16           THE COURT:  Sure.  You can speak with my clerk after

17   the call about getting a certified copy of the minute order

18   that we are entering today.

19           MR. BRZOWSKI:  Okay.  Basically how long would it,

20   though, would it be prepared?  How long does it take for the

21   order to be prepared today?

22           THE COURT:  I think she could probably get it done

23   this morning, maybe before you even leave.

24           MR. BRZOWSKI:  Okay.

25           THE COURT:  So if you want to just --

1          MR. BRZOWSKI:  I will be back in about 15, 20

2   minutes --

3          THE COURT:  Okay.

4          MR. BRZOWSKI:  -- and I will speak to your clerk.

5          THE COURT:  She may not have it done by then, but it

6   will be done this morning.

7          MR. BRZOWSKI:  Right, yeah.

8          THE COURT:  Okay.

9          MR. BRZOWSKI:  Thank you very much.

10          THE COURT:  Okay.  Thank you.

11          MR. BRZOWSKI:  Bye-bye.

12      (Proceedings concluded.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3

4

5              I, Colleen M. Conway, do hereby certify that the

6    foregoing is a complete, true, and accurate transcript of the

7    proceedings had in the above-entitled case before the

8    Honorable JAMES F. HOLDERMAN, one of the judges of said Court,

9    at Chicago, Illinois, on April 28, 2005.

10

11

12                                                           5/16/05
              Official Court Reporter                        ─────────
13            United States District Court                     Date
              Northern District of Illinois
14                 Eastern Division

15

16

17

18

19

20

21

22

23

24

25

Colleen M. Conway, Official Court Reporter

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2685 | **DATE** | 4/28/2005 |
| **CASE TITLE** | LAURA A. BRZOWSKI vs. WALTER J. BRZOWSKI | | |

**DOCKET ENTRY TEXT**

Defendant Walter J. Brzowski's motion for order of remand back to state court [10] is granted. Order case remanded to state court for lack of subject matter jurisdiction.

Docketing to mail notices.

A TRUE COPY-ATTEST
MICHAEL W. DOBBINS, CLERK

By _____
DEPUTY CLERK
U. S. DISTRICT COURT, NORTHERN
DISTRICT OF ILLINOIS
DATE: JUN 2 2 2005

| Courtroom Deputy Initials: | mak |
|---|---|

03C2685 LAURA A. BRZOWSKI vs. WALTER J. BRZOWSKI

Page 1 of 1

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### DOMESTIC RELATIONS DIVISION

LAURA A. BRZOWSKI )
     Petitioner )
     )
AND )
     )     **CASE NO. #01 D 14335**
Walter J. Brzowski )
    U.S. Natural Citizen )

## NOTICE OF FILING

TO: Michael A. Lew
    Attorney For Petitioner
    9700 West 131st Street
    Palos Park, IL. 60467

TO: Judge Gerald C. Bender
    Courtesy Copy   #2801
    50 West Washington St
    Chicago, IL. 60602

TO: Judge Raymond Figueroa
    Courtesy Copy   #3002
    50 West Washington St.
    Chicago, IL. 60602

TO: Presiding Judge Moeshe Jacobius
    Courtesy Copy   #1901
    50 West Washington Street
    Chicago, IL. 60602

TO: Chief Judge Timothy Evans
    Courtesy Copy   #2600
    50 West Washington Street
    Chicago, IL. 60602

TO: Clerk of the Circuit Court, IL.
    Court Certified Copy   #802
    50 West Washington Street
    Chicago, IL. 60602

PLEASE TAKE NOTICE, that on June _23_ , 2005, I filed with the Clerk of the Circuit Court Cook County, IL., Domestic Relations Division a: "**Certified Copy of a Federal Remand Order**", pursuant to Federal Titles: #28 @ 1447 (c), and @ 1446 (d), a copy of which is hereby served upon you.

Walter J. Brzowski
Pro Se Litigant
4941 West Columbus Drive
Oak Lawn, IL. 60453
#(708) 423-4810

*Walter J. Brzowski*
Walter J. Brzowski

## CERTIFICATE OF SERVICE

Under penalties as provided by law pursuant to Section #1-109 of the Code of Civil Procedure, I Walter J. Brzowski certify that on June _23_ , 2005, I ___mailed OR ___personally delivered NOTICE of FILING upon the parties mentioned above to whom the Notice is directed by placing First Class Postage in the United States Delivery Service, thereon.

*Walter J. Brzowski*    6/22/05
Walter J. Brzowski    Date

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

"SWORD OR SHIELD?" POST

Posted December 10th 2007, 5:17 PM

Two articles FYI and consideration re the abuse of DV orders, via false allegations. From the USA.
Family Law

# Sword or shield? Combating Order-of-Protection Abuse in Divorce

By Scott A. Lerner

Differences in the order-of-protection process under the IMDMA and the Illinois Domestic Violence Act create an opportunity for petitioners to gain an *unfair* advantage in divorce, this author says. Find out what counsel for the respondent can do in such cases.

In order of protection (OP) can be used as a sword as well as a shield in divorce. There's no question that victims need protection from abusers. But not all parties to divorce are above using OPs not for their intended purpose but solely to *gain* advantage in a dissolution.

How? The petitioner can use an OP to restrict visitation, gain exclusive use of the home, and obtain custody in an expedited manner.

This article compares the OP process under the Illinois Marriage and Dissolution of Marriage Act (IMDMA) with the Illinois Domestic Violence Act (DVA). It explains how differences in the acts, and particularly the petitioner-friendly nature of the DVA, create an opportunity for OP abuse in divorce. It also presents ways to challenge these abuses in court.

## OPs are easy to get, use under the DVA

Orders of protection are easy to file. The forms are available at any courthouse and can be completed by nonlawyers. In most counties, there are organizations to help complete the forms and appear in court with the alleged victim free of charge.

These nonattorney domestic abuse advocates are permitted by the legislature to sit at counsel table and give advice.[1] Indeed, conversations between the advocate and the petitioner are confidential and privileged.[2]

There are no filing or process-service fees for an order of protection[3] (though the respondent in some counties is required to pay a fee to the circuit clerk to respond to or deny a petition). As a result, *it is far less expensive and easier* to file a petition seeking an order of protection than to file documents seeking similar relief in a divorce

proceeding;

It is also easier to obtain the relief requested. An order of protection requires a finding by the preponderance of the evidence the petitioner was abused or harassed. If the order is granted and the petitioner requests exclusive possession of the home, it is presumed the balance of hardships favors the petitioner.4  The statute reads as follows: The balance of hardships is presumed to favor possession by petitioner unless the presumption is rebutted by a preponderance of the evidence, showing that the hardships to respondent substantially outweigh the hardships to petitioner and any minor child or dependent adult in petitioner's care. The court, on the request of petitioner or on its own motion, may order respondent to provide suitable, accessible, alternate housing for petitioner instead of excluding respondent from a mutual residence or household.5

The DVA specifically states that "[t]he grant of exclusive possession of the residence shall not affect title to real property, nor shall the court be limited by the standard set forth in Section 701 of the Illinois Marriage and Dissolution of Marriage Act."6

For those seeking the same relief under the IMDMA there is no such presumption. Under section 701 of the IMDMA it states as follows: Where there is on file a verified complaint or verified petition seeking temporary eviction from the marital residence, the court may, during the pendency of the proceeding, only in cases where the physical or mental well being of either spouse or their children is jeopardized by occupancy of the marital residence by both spouses, and only upon due notice and full hearing, unless waived by the court on good cause shown, enter orders of injunction, mandatory or restraining, granting the exclusive possession of the marital residence to either spouse, by eviction from, or restoration of, the marital residence, until the final determination of the cause.7 Although domestic abuse or harassment can certainly jeopardize the physical and mental well being of the occupants of the home, that might not be the case for a one-time incident. In In re Marriage of Lima, the second district reversed the trial court and held that a drop in blood sugar related to the wife's diabetes was not enough to conclude that the husband being in the home jeopardized her physical or mental well being. The wife also claimed that on a single occasion she felt "used" after sexual intercourse; the appellate court found that was not enough to conclude that the husband being in the home jeopardized her physical or mental well being.8 Also, under

the IMDMA notice and a full hearing are required prior to giving a party exclusive use of the home.

## Custody: Advantage to petitioner under the DVA

There are also differences between the IMDMA and the DVA when it comes to custody. Under the DVA, "there shall be a rebuttable presumption that awarding physical care to respondent would not be in the minor child's best interest."9 The fourth district appellate court in Mowen v Holland points out that "(t)o protect a minor from abuse or neglect or to protect the well-being of the minor, the trial court may award the party filing the petition the physical care and 'possession' of the minor."10

According to the DVA, "If a court finds, after a hearing, that respondent has committed abuse (as defined in Section 103) of a minor child, there shall be a rebuttable presumption that awarding temporary legal custody to respondent would not be in the child's best interest."11 In Sutherlin v Sutherlin, the fifth district reversed the trial court's decision not to grant temporary custody to the petitioner after granting an order of protection.12

Under the IMDMA, before granting custody the court must consider the best interests of the child or children based on a number of factors.13 The statute does, of course, allow the court in a custody hearing to consider abuse. The statute lists two factors specifically addressing abuse, "(6) the physical violence or threat of physical violence by the child's potential custodian, whether directed against the child or directed against another person; [and] (7) the occurrence of ongoing or repeated abuse as defined in Section 103 of the Illinois Domestic Violence Act of 1986, whether directed against the child or directed against another person."14

The statute goes on to say as follows:

Unless the court finds the occurrence of ongoing abuse as defined in Section 103 of the Illinois Domestic Violence Act of 1986, the court shall presume that the maximum involvement and cooperation of both parents regarding the physical, mental, moral, and emotional well-being of their child is in the best interest of the child. There shall be no presumption in favor of or against joint custody.15

This, however, does not create the same "rebuttable presumption" in favor of one party.

## Expedited timetable under DVA favors petitioners

On a practical level, the time frames set forth in the DVA further hamper a parent from presenting the same type of evidence in an order of protection hearing as in a divorce

- 3 -

proceeding. Under the statute, a petition for an order of protection shall be treated as an expedited proceeding.16 Thus a court may be making a decision *without hearing* all of the relevant evidence. Time is needed to obtain witnesses and to investigate claims of abuse.

There have been recent efforts to expedite matters of child custody proceedings under the IMDMA. Under Supreme Court Rule 922, all child custody proceedings shall be resolved within eighteen months from the date of service of the petition unless the court finds that good cause has been shown not to do so.17

Under the IMDMA, in any proceedings involving the support, custody, visitation, education, parentage, property interest, or general welfare of a minor or dependent child, the court may, on its own motion or that of any party, appoint an attorney to represent the child's interests.18 The court could further obtain the opinion of professional personnel or even obtain psychological evaluations of the people involved.19

Thus courts in dissolution cases when making decisions of custody and visitation tend to be more informed than courts hearing orders of protection. If a parent is willing to abuse the system, it is unlikely the trial court could discover their improper motives in an order of protection hearing. If a case involved parental alienation syndrome, mental illness, or drug use on the part of the petitioner that caused him or her to misinterpret events, it would be difficult for a court to discover the problem in an expedited proceeding under the DVA.

### Visitation: the greatest potential for OP abuse

*The greatest potential for abuse of the system is in visitation. It is far easier* to restrict visitation via an order of protection then by seeking the same relief under the IMDMA. Under the IMDMA, "A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral or emotional health."20

In Heldebrandt v Heldebrandt21 the fourth district reversed the trial court for restricting visitation based on the best interests of the child rather than the more stringent serious endangerment standard:

A trial court must hold a hearing on the issue of restricted visitation and should grant restricted visitation only after making the extraordinary finding that visitation would seriously endanger the child's physical, mental, moral, or emotional health.

- 4 -

The serious endangerment standard contained in section 607© of the Act is "onerous, stringent, and rigorous" to meet because liberal visitation is the rule and restricted visitation is the exception.22

In Griffiths v Griffiths,23 the fourth district states as follows:
The Illinois courts have held that where the proceeding is by a custodial parent to restrict or deny the visitation, the burden is upon the custodial parent to prove by a preponderance that the visitation then provided endangers the welfare of the children. (Cite). However, where the non-custodial parent seeks to modify visitation rights which have been originally granted in the dissolution decree, the burden of proof is upon such parent to show that the modification is in the "best interest" of the child or children.24

Under the DVA, the order can protect not only the alleged victim but also "any minor child or dependent adult in the care of such person."25 In the case of In re Marriage of McCoy,26 the fourth district makes it clear the trial court in an order of protection hearing has wide discretion to restrict visitation:
We do not read Hazelwonder27 as circumscribing a court's power to restrict visitation through an order of protection until such time as the child or children are directly harmed. (Cite). We reject any claim that evidence of abuse of the custodial spouse is an insufficient basis to support an order prohibiting unauthorized contact and potential abuse of the children in the custodian's care. The scope of the Act provides broad categories of abuse and prohibited conduct sufficient to impose an order of protection. (See 750 ILCS 60/214 (West Supp 1993).) Once one member of a household is abused, the court has maximum discretionary power to fashion the scope of an order of protection to include other household members or relatives who may be at risk of retaliatory acts by the abuser.28

The court in McCoy seems to find that the serious-endangerment standard does not apply to the restriction of visitation under an order of protection. This is an invitation for parents to use the DVA to circumvent the IMDMA.

## When "temporary custody" becomes permanent:

Courts are understandably wary of denying an order of protection. No one wants to put a parent or a child at risk. Yet as more parents become aware they can *gain a substantial advantage* in divorce by obtaining an order of protection, *the risk of abuse of the process increases.*

Children need stability. If one parent gets exclusive use of the marital home and temporary custody of the children while the other has restricted visitation, that latter parent is unlikely to win sole custody of the children. Children adapt to their environment, and it is harmful to move them.

The legislation seems to support this idea, requiring that "no motion to modify a custody judgment may be made earlier than 2 years after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe the child's present environment may endanger seriously his physical, mental, moral or emotional health."29

Courts have to address the difficulty of changing custody after a child has spent a lengthy stay with a temporary custodian. This issue was addressed by the third district in Wurm v Howard:30

As already stated, the final decision on custody was a result of concern for the stability and continuity of the children's lives, and it would not have served their best interests for the court to have ignored the fact that they had been residing with their mother and step-father in Champaign for well over two years. It must be accepted that their residence in Champaign for that time was the result of the decision on temporary custody and the delay caused by the appeal. However, all factors which relate to the best interests of the children should be considered by the court. Contrary to the dire warnings of consequences if the court's decision is upheld, we perceive no basis for concluding, on the record in this case, that our decision will unfairly advantage the parent who first obtains custody in the determination of the best interests of the children.31

In In re Marriage of Hefer,32 the fourth district specifically found that "(a) court may consider the period of time that a child has spent with a parent by virtue of a temporary custody order."33 It is clear that it cannot be in a child's best interests to move him or her from a stable environment. Thus, the longer a parent is able to retain temporary custody, the greater their opportunity to later obtain permanent custody.

### Appellate judges respond

The appellate court is hardly blind to the abuse of orders of protection.

In Radke v Radke, for example, the third district reversed the trial court that granted a plenary order of protection.34

The court concluded that:

- 6 -

(t)he Domestic Violence Act is not the appropriate vehicle for resolving such issues. We note that the order of protection did not restrict Ross's visitation or contact with Laine. The court narrowly drafted the order to prohibit physical abuse, harassment, interference with personal liberty or intimidation. Nevertheless, based on this record, we believe that Kathryn misused the Domestic Violence Act for the purpose of attempting to alter Ross's visitation with Laine. For that reason, and because we find that no harassment occurred, we reverse the judgment of the circuit court and vacate the order of protection.35

The court in In re Marriage of Gordon also addressed the problem of the misuse of the DVA to obtain orders of protection.36 The court wrote as follows:

Robert has not advanced any reason, nor can we find one, to justify his proceeding under the Domestic Violence Act rather than the Marriage Act. Whatever the relief he sought - extended visitation, injunction or custody - he could have received under section 610 of the Marriage Act. To approve the procedure followed in this case would be an open invitation to parties disappointed in a custody dispute to file a separate action under the Domestic Violence Act and call it something other than a claim for custody.37

The Gordon court went on to say that "(i)n this case...the Domestic Violence Act was misused and was a subterfuge to circumvent the requirements of the Marriage Act."38

## What can you do to combat OP abuse?

Judges, certainly, have a responsibility to act as gatekeepers by making sure they do not grant an order of protection except to protect the petitioner or the children. Lawyers, also, should take their ethical responsibility as officers of the court seriously and refuse to file an order of protection for any other reason.

## **Still, abuse will happen.** What can you do as counsel for the respondent?

Be ready to spend time and money. An order of protection is a high-stakes matter. The OP hearing could produce a result that will irrevocably affect the divorce and the lives of children. Violating an order of protection is a crime, and your client can be jailed for doing so. If you need an expert witness, don't hesitate to hire one.

Often, courts set multiple plenary orders of protection, leaving only 15 or 20 minutes for each case. Don't let your case be rushed. The judge may get angry, but you owe your client the best representation possible, even if it crowds the schedule.

Bring a motion to modify or dismiss. If you represent the respondent in a case where the OP is being used inappropriately, you should bring a motion to modify the

emergency order of protection or a motion to dismiss the order of protection and apprise the court that the petitioner is trying to use the DVA to circumvent the IMDMA. You should also file a motion to consolidate the OP and divorce cases.

\* Scott Lerner is a 1992 graduate from the University of Illinois College of Law and is currently an associate at the Lerner Law Office.

## Statute and Case Law cited precedents herein

1. 750 ILCS 60/205(b)(1).

2. 750 ILCS 60/227.

3. 750 ILCS 60/202(b).

4. 750 ILCS 60/214(b)(2)(A).

5. 750 ILCS 60/214(b)(2)(B).

6. 750 ILCS 60/214(b)(2).

7. 750 ILCS 5/701.

8. 265 Ill App 3d 753, 638 NE2d 1186 (2d D 1994).

9. 750 ILCS 60/214(b)(5).

10. 336 Ill App 3d 368, 374, 783 NE2d 180, 185 (4th D 2003), quoting 750 ILCS 60/214(b)(5).

11. 750 ILCS 60/214-2(B)6.

12. 363 Ill App 3d 691, 843 NE2d 398 (5th D 2006).

13. 750 ILCS 5/602.

14. 750 ILCS 5/602(a)(6) and (7).

15. 750 ILCS 5/602(a)(9)©.

16. 750 ILCS 60/212(a).

17. SCR 922

18. 750 ILCS 5/506.

19. 750 ILCS 5/604; 750 ILCS 5/604.5

20. 750 ILCS 5/607(a).

21. 251 Ill App 3d 950, 623 NE2d 780 (4th D 1993).

22. Id at 957, 623 NE2d at 784-85, quoting In re Marriage of Diehl, 221 Ill App 3d 410, 429, 582 NE2d 281, 294 (2d D 1991).

23. 127 Ill App 3d 126, 468 NE2d 482 (4th D 1984).

24. Id at 129, 468 NE2d at 485.

25. 750 ILCS 60/201(a)(iii).

26. 253 Ill App 3d 958, 625 NE2d 883 (4th D 1993).

27. People v Hazelwonder, 138 Ill App 3d 213, 485 NE2d 1211 (4th D 1985).

28. McCoy at 963, 625 NE2d at 886.

29. 750 ILCS 5/610(a).

30. 82 Ill App 3d 116, 402 NE2d 407 (3d D 1980).

31. Id at 122, 402 NE2d at 411-12.

32. 282 Ill App 3d 73, 667 NE2d 1094 (4th D 1996).

33. Id at 78, 667 NE2d at 1098.

34. 349 Ill App 3d 264, 812 NE2d 9 (3d D 2004).

35. Id at 269, 812 NE2d at 13.

36. 233 Ill App 3d 617, 599 NE2d 1151 (1st D 1992).

37. Id at 648, 599 NE2d at 1172.

38. Id.

The Conservative Voice
28 November 28, 2007 02:00 PM EST

# RESTRAINING ORDERS

- Have you just been served with restraining orders prohibiting you from being within 150 yards of your wife or child's Mother?
- Has your wife or girlfriend made false accusations of domestic violence against you which resulted in temporary or permanent restraining orders?
- Have you just received a phone call advising you that you have a hearing the next day at the courthouse?

Restraining Orders of one type or another are quickly becoming one of the most frivolously requested and misused court orders in the Family or Domestic law Courts. Unfortunately, there are individuals that have physically battered their spouses to some degree. Those individuals need counseling and therapy so that they can learn to deal with those inner feelings that cause them to become physically violent with their spouse and/or child. However, in many cases it is the person making the allegation (s) that actually initiated the physical confrontation. **Whatever the circumstances, it is never acceptable to be physically abusive with your spouse or child.** Physical confrontations with a spouse and/or child will be dealt with very severely by the court. But, there are a significant number cases where one party alleges domestic abuse when in fact no such abuse ever occurred. That having been said let me give you a very general overview of our domestic violence court system and what occurs in most cases that are brought to the court's attention.

When law enforcement arrives on the scene of an alleged domestic violence altercation they will first talk with both parties. They will determine if one or both of the parties has any type of bruise or injury. If so, that person will go to jail and a temporary restraining order will be issued.

Following the arrest the injured party will usually proceed to Family Court and file for protective orders. Such orders will almost always restrain the arrested party from being within 150 yards of the injured party, their children (if any), the children's school or day care provider and any other person in the care of the injured party. The arrested person can also be restrained from certain locations the injured party is known to frequent.

Most restraining are acquired on an **ex-parte** basis. This means that the requesting party can simply call you on the phone and give you notice of a hearing the following day. In some States and Counties this notice can be given only 4 hours before the hearing. If the accused party lives over 50 miles from the location of the court with jurisdiction the hearing is usually conducted the following day. Remember, the purpose of the Ex-parte hearing is only for issuance of **temporary** emergency protective orders good only until the time of the regular hearing, which is usually scheduled about 3 weeks later.

## Here's the bottom line on restraining orders:

It is virtually useless to respond to allegations made in support of any restraining order for the express purpose of opposing just the restraining orders. Remember, a request for restraining orders does not have to include any act of physical violence or threat. The only requirement is that the requesting party declare " a reasonable fear" of the person to be restrained. It is the opinion of most judges that if any person claims to fear another and has taken the trouble to come to court, the Judge will usually grant some form of protective orders. However, Restraining orders can also include orders prohibiting contact with your children. Therefore, if child custody and visitation are affected by the restraining orders, YOU MUST RESPOND IMMEDIATELY! If you do not the court will make broad-based restraining orders that are difficult to modify later on. Furthermore, restraining orders are often sought by women who are either contemplating a divorce or child custody battle or have already filed for divorce and want an advantage in court when it comes to determining issues of child custody and visitation.

If you have been recently served with temporary restraining orders or a notice of hearing requesting such orders, stay away from the requesting party until you go to court, no matter how ridiculous the allegations. Get a friend, family member or attorney to handle all correspondence regarding all issues until the time of the hearing.

I have written a book called the **Fathers Rights Survival Guide.** This simple, easy to understand guide contains a section on Restraining Orders and Domestic Violence issues. This section will answer all of the questions you may have about how to respond to false allegations and other steps you can take to help your case. Therefore, before you spend a dime on an attorney or other legal services learn how the

system works. Learn how the domestic violence system works. **You can be sure,your Ex has!** The information is good in all 50 States.

To learn more about the **Fathers Rights Survival Guide** and how you can obtain a copy simply click here.

### Legal Services

Fathers Rights, Inc. is an Internet based legal services company. We are solely dedicated to helping you resolve your Domestic Violence case efficiently and effectively.

We have been offering Fathers Rights legal assistance for nearly ten years. During this time we have developed a system that's educational, inexpensive and very effective.

The truth is, most Family Law cases can be resolved without the unnecessary expense of an attorney. Family law is much different than other forms of law. Unless you understand the simple rules, laws and court regulations that govern family law no attorney or other legal professional can ever help you!

All that is necessary is that you are willing to get involved and learn some simple rules and strategies that will help you resolve your legal problem (s). Further, that you desire to take control of your case. Once you have taken these important steps we will be glad to help you accomplish your legal goals.

There are now two ways in which we can help you. Dependant upon your legal needs, select one of the two legal assistance plans that is right for you.

If you would like to learn more about our legal service plans please click here. Legal Service plan Info.

Web site is: http://www.fathersrightsinc.com/

The Universal Declaration of Human Rights

**On December 10, 1948 the General Assembly of the United Nations adopted and proclaimed the Universal Declaration of Human Rights the full text of which appears in the following pages. Following this historic act the Assembly called upon all Member countries to publicize the text of the Declaration and "to cause it to be disseminated, displayed, read and expounded principally in schools and other educational institutions, without distinction based on the political status of countries or territories."**

### PREAMBLE

Whereas recognition of the inherent dignity and of the equal and inalienable rights of all members of the human family is the foundation of freedom, justice and peace in the world,

Whereas disregard and contempt for human rights have resulted in barbarous acts which have outraged the conscience of mankind, and the advent of a world in which human beings shall enjoy freedom of speech and belief and freedom from fear and want has been proclaimed as the highest aspiration of the common people,

Whereas it is essential, if man is not to be compelled to have recourse, as a last resort, to rebellion against tyranny and oppression, that human rights should be protected by the rule of law,

Whereas it is essential to promote the development of friendly relations between nations,

Whereas the peoples of the United Nations have in the Charter reaffirmed their faith in fundamental human rights, in the dignity and worth of the human person and in the equal rights of men and women and have determined to promote social progress and better standards of life in larger freedom,

Whereas Member States have pledged themselves to achieve, in co-operation with the United Nations, the promotion of universal respect for and observance of human rights and fundamental freedoms,

Whereas a common understanding of these rights and freedoms is of the greatest importance for the full realization of this pledge,

**Now, Therefore THE GENERAL ASSEMBLY proclaims THIS UNIVERSAL DECLARATION OF HUMAN RIGHTS** as a common standard of achievement for all peoples and all nations, to the end that every individual and every organ of society, keeping this Declaration constantly in mind, shall strive by teaching and education to promote respect for these rights and freedoms and by progressive measures, national and international, to secure their universal and effective recognition and observance, both among the peoples of Member States themselves and among the peoples of territories under their jurisdiction.

### Article 1.

All human beings are born free and equal in dignity and rights.They are endowed with reason and conscience and should act towards one another in a spirit of brotherhood.

### Article 2.

Everyone is entitled to all the rights and freedoms set forth in this Declaration, without distinction of any kind, such as race, colour, sex, language, religion, political or other opinion, national or social origin, property, birth or other status. Furthermore, no distinction shall be made on the basis of the political, jurisdictional or international status of the country or territory to which a person belongs, whether it be independent, trust, non-self-governing or under any other limitation of sovereignty.

### Article 3.

Everyone has the right to life, liberty and security of person.

### Article 4.

No one shall be held in slavery or servitude; slavery and the slave trade shall be prohibited in all their forms.

### Article 5.

No one shall be subjected to torture or to cruel, inhuman or degrading treatment or punishment.

### Article 6.

Everyone has the right to recognition everywhere as a person before the law.

### Article 7.

All are equal before the law and are entitled without any discrimination to equal protection of the law. All are entitled to equal protection against any discrimination in violation of this Declaration and against any incitement to such discrimination.

### Article 8.

Everyone has the right to an effective remedy by the competent national tribunals for acts violating the fundamental rights granted him by the constitution or by law.

### Article 9.

No one shall be subjected to arbitrary arrest, detention or exile.

### Article 10.

Everyone is entitled in full equality to a fair and public hearing by an independent and impartial tribunal, in the determination of his rights and obligations and of any criminal charge against him.

### Article 11.

(1) Everyone charged with a penal offence has the right to be presumed innocent until proved guilty according to law in a public trial at which he has had all the guarantees necessary for his defence.

(2) No one shall be held guilty of any penal offence on account of any act or omission which did not constitute a penal offence, under national or international law, at the time when it was committed. Nor shall a heavier penalty be imposed than the one that was applicable at the time the penal offence was committed.

### Article 12.

No one shall be subjected to arbitrary interference with his privacy, family, home or correspondence, nor to attacks upon his honour and reputation. Everyone has the right to the protection of the law against such interference or attacks.

### Article 13.

(1) Everyone has the right to freedom of movement and residence within the borders of each state.

(2) Everyone has the right to leave any country, including his own, and to return to his country.

### Article 14.

(1) Everyone has the right to seek and to enjoy in other countries asylum from persecution.

(2) This right may not be invoked in the case of prosecutions genuinely arising from non-political crimes or from acts contrary to the purposes and principles of the United Nations.

### Article 15.

(1) Everyone has the right to a nationality.

(2) No one shall be arbitrarily deprived of his nationality nor denied the right to change his nationality.

### Article 16.

(1) Men and women of full age, without any limitation due to race, nationality or religion, have the right to marry and to found a family. They are entitled to equal rights as to marriage, during marriage and at its dissolution.

(2) Marriage shall be entered into only with the free and full consent of the intending spouses.

(3) The family is the natural and fundamental group unit of society and is entitled to protection by society and the State.

### Article 17.

(1) Everyone has the right to own property alone as well as in association with others.

(2) No one shall be arbitrarily deprived of his property.

### Article 18.

Everyone has the right to freedom of thought, conscience and religion; this right includes freedom to change his religion or belief, and freedom, either alone or in community with others and in public or private, to manifest his religion or belief in teaching, practice, worship and observance.

### Article 19.

Everyone has the right to freedom of opinion and expression; this right includes freedom to hold opinions without interference and to seek, receive and impart information and ideas through any media and regardless of frontiers.

### Article 20.

(1) Everyone has the right to freedom of peaceful assembly and association.

(2) No one may be compelled to belong to an association.

### Article 21.

(1) Everyone has the right to take part in the government of his country, directly or through freely chosen representatives.

(2) Everyone has the right of equal access to public service in his country.

(3) The will of the people shall be the basis of the authority of government; this will shall be expressed in periodic and genuine elections which shall be by universal and equal suffrage and shall be held by secret vote or by equivalent free voting procedures.

### Article 22.

Everyone, as a member of society, has the right to social security and is entitled to realization, through national effort and international co-operation and in accordance with the organization and resources of each State, of the economic, social and cultural rights indispensable for his dignity and the free development of his personality.

### Article 23.

(1) Everyone has the right to work, to free choice of employment, to just and favourable conditions of work and to protection against unemployment.

(2) Everyone, without any discrimination, has the right to equal pay for equal work.

(3) Everyone who works has the right to just and favourable remuneration ensuring for himself and his family an existence worthy of human dignity, and supplemented, if necessary, by other means of social protection.

(4) Everyone has the right to form and to join trade unions for the protection of his interests.

### Article 24.

Everyone has the right to rest and leisure, including reasonable limitation of working hours and periodic holidays with pay.

### Article 25.

(1) Everyone has the right to a standard of living adequate for the health and well-being of himself and of his family, including food, clothing, housing and medical care and necessary social services, and the right to security in the event of unemployment, sickness, disability, widowhood, old age or other lack of livelihood in circumstances beyond his control.

(2) Motherhood and childhood are entitled to special care and assistance. All children, whether born in or out of wedlock, shall enjoy the same social protection.

### Article 26.

(1) Everyone has the right to education. Education shall be free, at least in the elementary and fundamental stages. Elementary education shall be compulsory. Technical and professional education shall be made generally available and higher education shall be equally accessible to all on the basis of merit.

(2) Education shall be directed to the full development of the human personality and to the strengthening of respect for human rights and fundamental freedoms. It shall promote understanding, tolerance and friendship among all nations, racial or religious groups, and shall further the activities of the United Nations for the maintenance of peace.

(3) Parents have a prior right to choose the kind of education that shall be given to their children.

### Article 27.

(1) Everyone has the right freely to participate in the cultural life of the community, to enjoy the arts and to share in scientific advancement and its benefits.

(2) Everyone has the right to the protection of the moral and material interests resulting from any scientific, literary or artistic production of which he is the author.

### Article 28.

Everyone is entitled to a social and international order in which the rights and freedoms set forth in this Declaration can be fully realized.

**Article 29.**

(1) Everyone has duties to the community in which alone the free and full development of his personality is possible.

(2) In the exercise of his rights and freedoms, everyone shall be subject only to such limitations as are determined by law solely for the purpose of securing due recognition and respect for the rights and freedoms of others and of meeting the just requirements of morality, public order and the general welfare in a democratic society.

(3) These rights and freedoms may in no case be exercised contrary to the purposes and principles of the United Nations.

**Article 30.**

Nothing in this Declaration may be interpreted as implying for any State, group or person any right to engage in any activity or to perform any act aimed at the destruction of any of the rights and freedoms set forth herein.

© 2002 Martin Luther King Papers Project. All rights reserved.

**INCARNATION CHURCH**
5757 West 127th Street
Palos Heights, Illinois 60463

*This is to Certify that*

Walter Brzowski

*and*

Laura Stang

*were united in*

# Holy Matrimony

*according to*

*the Rite of the Roman Catholic Church and in conformity with the Laws of the State of Illinois*

*On the* **14th** *day of* **February** *19* **98**

Witnesses {
William R. Brzowski

Donna Vaughn
}

*By the Rev.* Ronald J. Mass

*Issued* February 14, *19* **98**

Rev. Ronald J. Mass *Pastor*

THE MISSION PRESS · CHICAGO

THIS MARRIAGE CERTIFICATE REMAINS IN FULL FORCE AND EFFECT UPON THESE SPOUSES