## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| WALTER BRZOWSKI | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  17 CV 09339 |
| | ) | |
| | ) | |
| | ) | Judge Matthew F. Kennelly |
| BRENDA SIGLER, and | ) | |
| DAVID HADLEY, | ) | Jury Trial Demanded |
| | ) | |
| Defendants. | ) | |

## THIRD AMENDED COMPLAINT

Plaintiff Walter Brzowksi complains of Defendants Brenda Sigler, and David Hadley as follows:

### Background

1.     Walter Brzowski was wrongfully held in the custody for an extra 902 days because the Defendant Sigler willfully ignored numerous complaints from Mr. Brzowski that his release date had been miscalculated and that he should have been released for a sentence that he had completely served.

2.     Mr. Brzowski should have been released on July 30, 2015, but Defendant Sigler repeatedly denied Mr. Brzowski's complaints, causing him to be kept in Pontiac prison until July 20, 2017 despite the fact that Mr. Brzowski had completely served his served his sentence.

3.　　　Worse, during the course of Mr. Brzowski's over-detention, Defendant Hadley caused Mr. Brzowski to be confined in segregation for 17 of the 30 months that he was wrongfully held.

4.　　　During his incarceration beyond his lawful sentence, Mr. Brzowski filed at least thirty documented internal complaints with various prison personnel including Defendant Sigler, Mr. Brzowski's counselors, and the Warden of Pontiac Prison. When Mr. Brzowski first began to complain about his continued incarceration the Warden's Office at Pontiac Prison told Defendant Sigler that Mr. Brzowski's complaints were "possibly" a "pile of nonsense."

5.　　　Each time, Defendant Sigler willfully opposed the request to release Mr. Brzowski and was deliberately indifferent to facts that clearly demonstrated that Mr. Brzowski's released date had been miscalculated and that his time had been served.

6.　　　Mr. Brzowski also *habeas corpus* petitions filed with state and federal courts pointing out the miscalculation and asking to be freed.

7.　　　Evidence of Sigler's deliberate indifference to Mr. Brzowski's complaints about his release includes, but is not limited to, how Defendant Sigler relied on U.S. Supreme Court decision, namely the *Johnson* decision, as a basis to deny Mr. Brzowski's requests for release and continue his incarceration despite the fact that Defendant Sigler is not an attorney and did not consult with an attorney before relying on the *Johnson* decision.

8.　　　Finally, on June 8, 2017, the Illinois Appellate Court ordered that Mr. Brzowski be released. Mr. Brzowski was finally freed six weeks later on July 20, 2017.

9.      Shortly after the Illinois Appellate Court ordered that Mr. Brzowski be released, Defendant Sigler had email communication with the Records Office of Pinckneyville prison, which was the prison in which Mr. Brzowski was housed until he was transferred to Pontiac prison after he was re-sentenced in July 2012.

10.     Through that email communication, Defendant Sigler received, for the first time, the entirety of Mr. Brzowski's master inmate file.

11.     Further evidence of Sigler's deliberate indifference includes, but is not limited to, how Defendant Sigler failed to review all portions of Mr. Brzowski's master inmate file, including a handwritten sentencing calculation -- "Brzowski M29120 Calculation" -- belonging to Mr. Brzowski that the Illinois Department of Corrections (IDOC) has admitted is genuine and was maintained in the ordinary course of IDOC's activities. (*See* Exhibit A, "Brzowski M29120 Calculation")

12.     The handwritten Brzowski M29120 Calculation expressly stated that Brzowski's discharge date from IDOC was November 1, 2015 which directly conflicted with the sentencing calculation that Defendant Sigler cited as a basis to deny Mr. Brzowski's complaints for release.

## Jurisdiction and Venue

13.     Federal jurisdiction over this Civil Rights action, brought pursuant to 42 U.S.C. §1983, is based upon 28 U.S.C. §1331 and §1343(a).

14.     Venue is proper because acts or events giving rise to the complaint occurred in the Northern District of Illinois, Eastern Division.

## Parties

15.    Plaintiff WALTER BRZOWSKI is a citizen of the State of Illinois and resident of the City of Chicago.

16.    Defendant BRENDA SIGLER, the Records Department Supervisor of Pontiac Correctional Center, is sued in her individual capacity.

17.    Defendant, DAVID HADLEY, a Correctional Officer in Pontiac Correctional Center, is sued in his individual capacity.

## Procedural History

18.    On January 12, 2017, the United States Court of Appeals for the Seventh Circuit, determined that, "Brzowski had made a substantial showing that he is being denied his right to due process of law by being kept in [the Illinois Department of Corrections] beyond his sentence."

19.    On June 8, 2017, the Illinois Appellate Court determined that Mr. Brzowksi had served excessive time and that, "[u]nless the trial court determines that plaintiff should remain in custody for such other reason, he should be released immediately."  (*See* Exhibit B, 6/8/17 Order.)

20.    Mr. Brzowski was discharged from custody on July 20, 2017.

21.    Mr. Brzowski was wrongfully forced to serve an extra 902 days in IDOC despite repeatedly demonstrating that he had served his time.

## Facts

22.    In 2010, Mr. Brzowski was convicted and sentenced to time in the Illinois Department of Corrections ("IDOC").

23.     On May 4, 2012, in Will County Case No. 2010 CF 1923, Mr. Brzowski was sentenced to two concurrent one-year sentences and a four-year mandatory supervised release ("MSR") term.

24.     On June 1, 2012, in Will County Case No. 2010 CF 2494, Mr. Brzowski was convicted and sentenced to two concurrent three-year sentences and a four-year MSR term.

25.     These two sentences were to run consecutively for a total of four years with day-for-day good time and four to eight years of MSR.

26.     Mr. Brzowski appealed both convictions in the Illinois Appellate Court after June 1, 2012, in Case No. 03-12-00376-U.

27.     On September 10, 2013, Mr. Brzowski completed both terms of his incarceration and was released from custody to begin a four-year MSR term.

28.     On October 1, 2013, Mr. Brzowski was arrested for violating the terms of his MSR and remanded to IDOC on November 29, 2013.

29.     On October 10, 2014, Mr. Brzowski was found *not* guilty in Cook County criminal Case No. 13 CR 210201, which triggered the violation of his MSR on October 1, 2013.

30.     In the fall of 2014, Mr. Brzowski filed a petition for *habeas corpus* in Will County, Circuit Court Case No. 14 MR 2630, stating that he had served his time and that he should be released.

31.     While that petition was pending, Mr. Brzowski's two Will County convictions, which gave rise to his incarceration, were reversed by the Illinois Appellate Court and remanded for new trials.

32.     Mr. Brzowski was re-sentenced on July 22, 2015, in his original Will County Case No. 10 CF 1923 to three years imprisonment and a four-year MSR term.

33.     His other Will County Case No. 10 CF 2494 was *nolle prosequi* on July 22, 2015 as part of a plea deal with the State's Attorney.

34.     At that hearing, the State's Attorney told the court that Mr. Brzowski had already served his time, however, Mr. Brzowski was *not* released.

35.     The calculation of Mr. Brzowski's sentence at that time was as follows:

   a. Mr. Brzowski was credited with 1452 days for time-served, which included his pretrial detention, beginning July 30, 2011, through his entire time in IDOC.

   b. The court stated that except for the 20 days he was released on his MSR term, Mr. Brzowksi had remained in IDOC custody.

   c. Based on his day-for-day good time credits, Mr. Brzowski's sentence on July 22, 2015 required that he serve 1460 days in prison.

   d. As of July 22, 2015, Mr. Brzowski only needed to serve eight additional days in prison, before he had fully completed his sentence (1460 days imposed by the new sentence less 1452 days credited as time served).

       e.   After serving the eight additional days in prison, Mr. Brzowski would have been fully discharged from IDOC, without needing to serve any more time on MSR.

36. On October 14, 2015 the Illinois Prisoner Review Board reduced Mr. Brzowski's period of MSR from four years to two years, reducing the total days he needed to be held in custody from 1,460 to 1,278.

37. An IDOC Counseling Summary, created by Defendant Brenda Sigler, incorrectly indicated that Mr. Brzowski was received in IDOC custody on July 28, 2015, rather than the correct date of July 30, 2011.

38. An affidavit executed by Defendant Sigler, dated December 15, 2015, maintains that Mr. Brzowski's date of custody was July 28, 2015.

39. Mr. Brzowski specifically alerted Defendant Sigler to the issues in her report, through written grievances, which were documented through IDOC Counseling Summaries.

40. In these grievances, Mr. Brzowski specifically cited the miscalculation, and identified the correct calculation of his release date.

41. Despite Mr. Brzowski's numerous grievances, he was not released from custody.

42. In an order dated June 8, 2017, the Illinois Appellate Court determined that Mr. Brzowski was to be released from IDOC custody *immediately* unless the trial court determined that he was being held on any other charges.

43. Mr. Brzowski was released from IDOC on July 20, 2017.

44.     In total, Mr. Brzowski was held in IDOC for 2,180 days, and only needed to be held for 1,278 days.

45.     Mr. Brzowski served 902 days in IDOC beyond his original sentence.

46.     Making matters worse, Mr. Brzowski was placed in segregation from December 30, 2015 to May 30, 2017 due to a disciplinary ticket from Pontiac Correctional Officer, David Hadley, which was later determined to be unfounded.

47.     During that time, Mr. Brzowski had restricted access to prison services, including communication and visits with his family.

48.     The restriction placed upon Mr. Brzowski by the confinement to segregation inhibited his ability to advocate for his release.

**COUNT I**
**42 U.S.C. §1983 – VIOLATION OF DUE PROCESS**
(Defendant Sigler)

49.     Paragraphs 1-48 are incorporated herein.

50.     Mr. Brzowski was wrongfully detained for an extra 902 days after he had served his sentence.

51.     As a result of that over-detention Mr. Brzowski suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries.

52.     By depriving Mr. Brzowski of his fundamental right to liberty, Defendants violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution. As Defendants were acting under the color of state law, Plaintiff's claims are actionable under 42 U.S.C. § 1983.

53.     Defendants opposed Mr. Brzowski's petitions to be released and falsely represented that Mr. Brzowski was correctly incarcerated, thereby depriving him of due process of law.

**WHEREFORE**, Plaintiff prays that the Court enter judgment for him and against Defendants, and award Plaintiff compensatory damages, punitive damages, and reasonable attorney fees sufficient to compensate Plaintiff for his injuries.

**COUNT II**
**42 U.S.C. §1983 – FALSE IMPRISONMENT**
(Defendant Sigler)

54.     Paragraphs 1-53 are incorporated herein.

55.     Defendant Sigler was deliberately indifferent to Mr. Brzowski's requests to be freed by willfully and deliberately failing to conduct a meaningful investigation into the factual bases for Mr. Brzowski's complaints and grievances, including but not limited to, ensuring that Sigler had a complete and entire set of all portions of Mr. Brzowski's master inmate file to confirm that she had a complete and accurate compilation of material information to adequately and accurately evaluate Mr. Brzowski's numerous complaints that was being held in prison beyond his lawful sentence.  Her failure to conduct a meaningful investigation of Mr. Brzowski's complaints caused him to be unlawfully imprisoned beyond his lawful sentence by 902 days.

56.     The imprisonment of Plaintiff for 902 days without probable cause, or other lawful justification, was a direct result of the failure by Defendant Sigler to, among other things, not unnecessarily limit Plaintiff's freedom and violated

Plaintiff's rights under the Fourteenth Amendments to the Constitution of the United States.

**WHEREFORE**, Plaintiff prays that the Court enter judgment for him and against Defendants, and award Plaintiff compensatory damages, punitive damages, and reasonable attorney fees sufficient to compensate Plaintiff for his injuries.

**COUNT III**
**42 U.S.C. §1983 – VIOLATION OF EIGHTH AMENDMENT CRUEL AND UNUSUAL PUNISHMENT**
(Defendants Sigler and Hadley)

57.    Paragraphs 1-56 are incorporated herein.

58.    Defendant Sigler was deliberately indifferent to Mr. Brzowski's requests to be freed by willfully and deliberately failing to conduct a meaningful investigation into the factual bases for Mr. Brzowski's complaints and grievances, including but not limited to, ensuring that Sigler had a complete and entire set of all portions of Mr. Brzowski's master inmate file to confirm that she had a complete and accurate compilation of material information to adequately and accurately evaluate Mr. Brzowski's numerous complaints that was being held in prison beyond his lawful sentence. Her failure to conduct a meaningful investigation of Mr. Brzowski's complaints caused him to be unlawfully imprisoned beyond his lawful sentence by 902 days.

59.    Defendant Hadley acted recklessly and with deliberate indifference by initiating internal disciplinary tickets against Mr. Brzowski in retaliation for Mr. Brzowski filing an excessive force lawsuit against Defendant Hadley. As a direct

result of Hadley's retaliatory initiation of a disciplinary ticket, Defendant Hadley proximately caused Mr. Brozwski to be placed in segregation for an additional 5 months beyond an existing 12-month term of segregation Mr. Brzowski was serving.

60.     The housing of Mr. Brzowski in segregation for the additional 5-month term as a means of subjecting him to retaliation for engaging in his good faith pursuit of protected activity constitutes a violation of his Eighth Amendment right to be free from cruel and unusual punishment, because he was and subject to severely restrictive conditions during the course of his wrongful incarceration.

**WHEREFORE**, Plaintiff prays that the Court enter judgment for him and against Defendants, and award Plaintiff compensatory damages, punitive damages, and reasonable attorney fees sufficient to compensate Plaintiff for his injuries.

### COUNT IV
### INDEMNIFICATION – 5 ILCS 350/1

61.     Paragraphs 1-60 are incorporated herein.

62.     Defendants were employees of the State of Illinois, as that term is used in 5 ILCS 350/1(b).

63.     Defendants, pursuant to 5 ILCS 350/1, are entitled to indemnity provided the Defendants serve notice upon the State of any judgment entered herein.

**WHEREFORE**, Plaintiff prays that Defendants be ordered to submit any award of compensatory damages, costs, and reasonable attorneys' fees entered against them to the State of Illinois for payment.

**PLAINTIFF DEMANDS TRIAL BY JURY**

**DATED:** December 23, 2019

                              **PLAINTIFF WALTER BRZOWSKI**

                              /s/ Devlin J. Schoop
                                  One of his Attorneys

Victor P. Henderson
Christopher W. Carmichael
Devlin J. Schoop
**HENDERSON PARKS, LLC**
140 South Dearborn, Suite 1020
Chicago, IL 60603
Phone: (312) 262-2900
Facsimile: (312) 262-2901
vphenderson@-henderson-parks.com
aroffman@henderson-parks.com

# EXHIBIT A

BRZOWSKI   M29120   Calculation

1) Offender serves his sentence & MSR on 9-10-13
2) Violates his MSR on 10-1-13 & brought back to IDOC.
3) On 4-30-14 is declared a violator by the PRB.
4) Offender is calculated to discharge on 9-21-15 for his violation
5) Offender is discharged on 6-18-15 due to RVR decision.
6) Offender is resentenced and brought back to DOC on 7-28-15
7) Offender does not have a host site and VAD on 7-28-15
8) ∃ At this time, the offender owes DOC 3 months and
   3 days on his MSR term if served in DOC (DAY for DAY)
   6-18-15 to 9-21-15 = 3 months + 3 days.
9) Offender reached his maximum discharge date on
   11-1-15

$$
\begin{array}{ccc}
15 & 7 & 28 \leftarrow \text{Recustody Date} \\
& 3 & 3 \leftarrow \text{Remaining MSR term} \\
\hline
15 & 11 & 1 \leftarrow \text{Discharge Date}
\end{array}
$$

10) In my opinion this offender has served his full
    sentence.

EXHIBIT B

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2017 IL App (3d) 160228-U

Order filed June 8, 2017

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2017

| | | |
|---|---|---|
| WALTER J. BRZOWSKI, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Will County, Illinois. |
| | ) | |
| v. | ) | Appeal No. 3-16-0228 |
| | ) | Circuit No. 14-MR-2630 |
| GUY PIERCE, Warden, and TOM | ) | |
| SPILLER, | ) | The Honorable |
| | ) | Cory D. Lund, |
| Defendants-Appellees. | ) | Judge, presiding. |
| | ) | |

_____

JUSTICE McDADE delivered the judgment of the court.
Justices Schmidt and Wright concurred in the judgment.

_____

**ORDER**

¶ 1        *Held*:   The trial court erred in denying plaintiff's petition for *habeas corpus*.

¶ 2        Plaintiff Walter J. Brzowski filed two petitions for *habeas corpus*, alleging that the trial

court lacked jurisdiction in this case and that plaintiff had completed his sentence and mandatory

supervised release (MSR) term. The court denied the first petition without prejudice and,

subsequently, denied the second petition, determining that plaintiff had additional days to serve
in Illinois Department of Corrections (DOC) custody. Plaintiff appeals to this court. We reverse.

¶ 3                                                    FACTS

¶ 4          In 2010, plaintiff Brzowski was charged in two separate cases for violating an order of
protection obtained for his ex-wife and two children. In case No. 2010 CF 1923, plaintiff was
convicted and sentenced to two concurrent one-year sentences and a four-year MSR term. In a
separate trial in case No. 2010 CF 2494, plaintiff was convicted and sentenced to two concurrent
three-year sentences and a four-year MSR term. The two sentences were to run consecutively for
a total of four years' imprisonment, with day-for-day good time to apply, and probably four, but
possibly eight years of MSR.  Plaintiff appealed his convictions.

¶ 5          In September 2013, plaintiff had completed both terms of actual incarceration and was
released from prison to begin his four-year MSR term. He was, however, arrested 20 days later
for multiple MSR violations in October 2013, including, possibly, failure to find an approved
host site after release.  He was remanded to the DOC on November 29, 2013, to serve the
revoked MSR and has remained there to the present day.

¶ 6          In 2014, plaintiff filed a petition for *habeas corpus*, alleging he had served all of his time
and seeking release from the DOC.  While the petition was pending, this court reversed
plaintiff's 2011 convictions, holding the trial court had failed to properly admonish plaintiff of
his right to waive counsel and remanded the cases for new trials.  *People v. Brzowski*, 2015 IL
App (3d) 120376-U. On remand, plaintiff pled guilty to violating the order of protection in case
No. 2010 CF 1923 and was sentenced on July 22, 2015, to three years' imprisonment and a four-
year MSR term. The State's Attorney *nolle prosequied* the second case. At the 2015 sentencing
hearing, the State's Attorney told the court that the plaintiff had served, with the credits and new

2

sentence, all the time he should have served.  He did not, however, assert that the plaintiff should be released.  Subsequently, the court dismissed plaintiff's petition for *habeas corpus* without prejudice.

¶ 7        In the 2015 calculation to determine if he should be released, plaintiff was credited 1452 days for time served, which included credit for his pretrial detention beginning on July 30, 2011, and his entire time in the DOC.  The court's order expressly stated that except for the 20 days he was released on his failed MSR, plaintiff had remained in DOC custody.  Plaintiff was immediately returned to DOC custody because of his MSR revocation two years earlier. According to a DOC Counseling Summary dated November 28, 2015, the prisoner review board reduced plaintiff's four-year MSR term to two years because he would not be serving it in the community and he had received day-for-day credit while in custody.  The Counseling Summary incorrectly recited, however, that plaintiff was not "received at IDOC until 7/28/15".

¶ 8        In June 2015, plaintiff filed an emergency petition for *habeas corpus* and the trial court granted the petition but stayed its judgment for 21 days. Ultimately, the court vacated its judgment because it questioned whether it had jurisdiction to grant judgment while an Illinois Supreme Court case was pending on the original petition for *habeas corpus*. *Brzowski v. Pfister*, No. M13686 (Ill. Jan. 21, 2016) (motion for leave to file writ of *habeas corpus* denied). On January 15, 2016, plaintiff then filed a motion to reinstate the court's earlier judgment that he should be released.  On March 3, 2016, the trial court, however, denied the motion, holding that plaintiff was not entitled to immediate release because he had not completed his sentence. Plaintiff filed a motion to reconsider, which the trial court denied. Plaintiff appeals to this court.

¶ 9                                                    ANALYSIS

¶ 10                                       A. Writ of *Habeas Corpus*

3

¶ 11          Plaintiff brings a claim of *habeas corpus* before this court challenging the trial court's jurisdiction and his time served in prison. In Illinois, a writ of *habeas corpus* is available only to obtain the release of a prisoner who has been incarcerated under a judgment of a court which lacked jurisdiction of the subject matter or the person of the petitioner, or where there has been some occurrence subsequent to the prisoner's conviction which entitled him to release. *Barney v. Prisoner Review Board*, 184 Ill. 2d 428, 430 (1998). "A petition for writ of *habeas corpus* may not be used to review proceedings which do not exhibit one of these defects." *Id.* Here the enabling occurrence was the appellate court's decision vacating his conviction and resulting in the challenged period of incarceration.  If a petitioner has been deprived of his liberty, his remedy is immediate release from custody. *People ex rel. Burbank v. Irving*, 108 Ill. App. 3d 697, 700 (1982). A denial of a petition for *habeas corpus* is reviewed *de novo*. *Hennings v. Chandler*, 229 Ill. 2d 18, 24 (2008).

¶ 12                              1. Excessive Sentence

¶ 13          Plaintiff seeks *habeas corpus* relief, alleging that he has served his time on his sentence and should be immediately released from DOC custody.

¶ 14          We begin by addressing plaintiff's sentence imposed on remand.  It is well established in Illinois that "a harsher sentence imposed after a successful appeal or motion to reconsider is only proper if it is based on additional bad conduct performed by the defendant after the original sentence." *People v. Moore*, 177 Ill. 2d 421, 433 (1997).  Plaintiff was involved in additional bad conduct in the form of violations of his initial MSR.  Although he was penalized for them by revocation of the MSR, we are unaware of any proscription against using them to justify an increase in his sentence on remand.

4

¶ 15        However, the record reveals that plaintiff had completed his sentences of incarceration *on the original convictions* even before the appellate court reversed them, and his original revoked MSR term would have been completed very shortly after he received his new sentence on remand in July 2015 that required plaintiff to serve an additional 548 days in prison. Specifically, plaintiff was convicted of violating the order of protection and sentenced to four years' imprisonment that he served and completed, with day-for-day good time credit, from September 10, 2011, to September 10, 2013. Plaintiff was released from prison on September 10, 2013, to begin his four-year MSR term; however, his MSR was revoked 20 days later when he was arrested in October for violating his MSR. Plaintiff's DOC summary, in addressing the revocation, stated that he was to serve two years instead of four years of MSR because the same day-for-day credit ordered for his term of incarceration would apply to his in-house MSR. The summary also noted that plaintiff was to receive credit for jail time he served beginning July 30, 2011. Based on this information, plaintiff had completed the two years of his MSR term in July 2015. Also, if we apply plaintiff's credit for time served against his sentence and MSR term as the trial court did in this case, he had eight days left on his sentence as of July 22, 2015.[1] The DOC suggests that plaintiff was not received into its custody until July 28, 2015, but the record shows that, except for the 20 days in September/October 2013, plaintiff has not ever been released from the DOC since 2011. Plaintiff's new sentence on remand does not restart his sentence, and he is entitled to all of the credit he earned in prison (730 ILCS 5/5-4.5-100(b) (West 2010) (offender is entitled to credit against his sentence for time spent in custody as a result of the offenses for which the sentence was imposed); see also 730 ILCS 5/3-3-9(a)(3)(ii)

_____

[1] As a result of day-for-day credit, plaintiff served two years of his sentence and served two years of MSR in prison based on the terms of his IDOC summary, totaling four years or 1,460 days. In July 2015, the trial court calculated plaintiff had 1,452 days of credit. Plaintiff's sentence after day-for-day credit is applied (1,460 days) subtracted by his time served (1,452 days) leaves eight days left on plaintiff's sentence.

(West 2010) (offender is entitled to credit against his term of reimprisonment after MSR revocation)). Therefore, we determine that the trial court erred when it denied plaintiff's petition for *habeas corpus* relief.

¶ 16      Defendants cite *United States v. Johnson*, 529 U.S. 53 (2000), for the proposition that excess time served in prison does not reduce the length of a MSR term. In *Johnson*, the United States Supreme Court reviewed whether a defendant was entitled to credit against his MSR for excessive time served on his sentence. *Id.* at 54. The Court determined that supervised released was not imposed until after imprisonment and defendant is released from DOC custody. *Id.* at 57-58. The Court also noted that the objectives of supervised release, *i.e.*, assisting individuals in their transition into the community, would not be fulfilled if defendants were given excess time served against their MSR term. *Id.* at 59. Therefore, the Court concluded that excess time served in prison cannot be applied to a supervised release term. *Id.*

¶ 17      *Johnson* is distinguishable from this case. First, *Johnson* involves a defendant who has been released from DOC custody whereas plaintiff in this case had his MSR revoked and remained in DOC custody. Furthermore, plaintiff is not fulfilling the objectives of his MSR term because he cannot transition into the community while he is imprisoned.

¶ 18      Moreover, credit for time served actually has been applied to MSR revocation in Illinois. Section 3-3-9(a)(3)(ii) states, "the person shall be given credit against the term of reimprisonment or reconfinement for time spent in custody since he or she was paroled or released which has not been credited against another sentence or period of confinement." 730 ILCS 5/3-3-9(a)(3)(ii) (West 2010). Also, the Fourth District in *Jackson v. Fairman*, 94 Ill. App. 3d 131, 132 (1981), determined that a defendant was entitled to credit against his MSR revocation pursuant to section 3-3-9. See 730 ILCS 5/3-3-9(a)(3)(ii) (West 2010). In *Jackson*, the

6

defendant was arrested for theft and given credit against the theft for time spent in custody

between the arrest and sentencing on the theft offense. Afterward, the defendant's MSR was

revoked and he sought credit against the revocation of his MSR for time he was incarcerated

between his sentencing for theft and the MSR revocation. *Id.* at 132-33. The Fourth District held

that the defendant was entitled to credit for time served against his MSR revocation sentence. *Id.*

at 133. Regardless, plaintiff served his MSR time when he was imprisoned for violating his MSR

from October 2013 to October 2015. Thus, defendants' argument fails on this issue. We find that

plaintiff's incarceration for all but eight days of his revoked MSR should be credited against his

new MSR.

¶ 19            The new MSR imposed after remand was four years served outside of prison.

Nonetheless, the DOC determined that he should still be subject to the earlier revocation and

should serve a new two-year in-house term.  The DOC is vested with the authority to make this

determination by section 3-6-3 of the Unified Code of Corrections (730 ILCS 5/3-6-3 (West

2010)). See also *Johnson v. Franzen*, 77 Ill. 2d 513, 516 (1979) ("The Code expressly directs the

Department to prescribe rules and regulations providing for good-conduct on a day-for-day

basis.").

¶ 20            By this point, defendant has completed the remaining eight days of his revoked MSR

term. We find plaintiff has served his time in case No. 2010 CF 1923 and reverse the trial court's

ruling denying plaintiff's petition for *habeas corpus*. Accordingly, in this case, plaintiff is

entitled to immediate release from DOC custody. The record is silent on whether plaintiff is also

in custody on other unrelated charges or convictions. Unless the trial court determines that

plaintiff should remain in custody for such *other* reason, he should be released immediately.

¶ 21                                2. Petition for Substitution of Judge

7

¶ 22    The issue above is dispositive of this case; however, we continue our review of plaintiff's remaining issues. Next, plaintiff argues that the trial court's denial of his petition for substitution of judge was error and, therefore, any subsequent judgment is void due to lack of jurisdiction.

¶ 23    " 'Jurisdiction is a fundamental prerequisite to a valid prosecution and conviction. Where jurisdiction is lacking, any resulting judgment rendered is void and may be attacked either directly or indirectly at any time.' " *People v. Castleberry*, 2015 IL 116916, ¶ 11 (quoting *People v. Davis*, 156 Ill. 2d 149, 155 (1993)). There are two types of jurisdiction: personal and subject matter. *Id.* ¶ 12. Personal jurisdiction is acquired when an individual appears personally before the court. *People v. Kleiss*, 90 Ill. App. 3d 53, 55 (1980). Pursuant to the Illinois Constitution, a circuit court has subject matter jurisdiction over all justiciable matters. Ill. Const. 1970, art. VI, § 9. A justiciable matter is "a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interest." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 335 (2002).

¶ 24    Once jurisdiction is established, "no subsequent error or irregularity will oust the jurisdiction thus acquired." *People v. Davis*, 156 Ill. 2d 149, 156 (1993). Jurisdiction is not lost when a court makes a mistake in its determination. *Id.* Nor do constitutional violations deprive a court of jurisdiction. *People v. Raczkowski*, 359 Ill. App. 3d 494, 498-99 (2005).

¶ 25    Here, the trial court did not lack jurisdiction when it denied plaintiff's petition for substitution of judge. The court had personal jurisdiction over plaintiff because he was present in court for violating an order of protection. Further, the court had subject matter jurisdiction over the case because the criminal prosecution for violating an order of protection is a justiciable matter before the court. The alleged error from the court's denial of the petition for substitution

8

of judge does not affect the court's jurisdiction. *Davis*, 156 Ill. 2d at 156 (jurisdiction is not lost when court makes subsequent error in the case). Therefore, we hold that plaintiff is not entitled to *habeas corpus* relief on the issue of the denial of the petition for substitution of judge.

¶ 26                                    3. Order of Protection

¶ 27          Lastly, plaintiff contends that the court lacked jurisdiction after it ordered a subsequent order of protection because the earlier order of protection contained fatal defects.

¶ 28          As previously discussed above, "no subsequent error or irregularity will oust the jurisdiction thus acquired" once jurisdiction is established. *Davis*, 156 Ill. 2d at 156. Jurisdiction is not lost when a court makes a mistake in its determination. *Id.*

¶ 29          We have established that the court had personal and subject matter jurisdiction in this case and that no subsequent error will remove the court's jurisdiction. Plaintiff's argument also fails with regard to any alleged error in the order of protection, and therefore, we find that plaintiff is not entitled to *habeas corpus* relief on the issue of the order of protection.

¶ 30                                        CONCLUSION

¶ 31          The judgment of the circuit court of Will County is reversed on the issue of whether plaintiff has actually served the requisite time to complete his sentence in this case.  The matter is remanded to the trial court for determination of whether other convictions require that he remain incarcerated.

¶ 32          Reversed  and remanded for further proceedings consistent with this order.

9