IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WALTER BRZOWSKI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 17 C 9339 |
| ) | |
| BRENDA SIGLER and DAVID HADLEY, ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Walter Brzowski, who was formerly incarcerated at Pontiac Correctional Center, asserts claims under 42 U.S.C. § 1983 against Brenda Sigler, the records office supervisor at Pontiac, and David Hadley, a correctional officer there. Brzowski alleges that Sigler violated his rights under the Eighth and Fourteenth Amendments by repeatedly dismissing his complaints that his release date was wrong and causing him to remain in prison for nearly two years after he had completed the full term of his sentence. Brzowski also alleges that he was placed in segregation at Pontiac due to a false accusation of assault by Hadley and that this violated his Eighth Amendment rights. Both sides have moved for summary judgment on all of the claims in Brzowski's third amended complaint.

### Background

In 2012, Brzowski was convicted and sentenced in two separate cases in a Will County court for violating an order of protection for his ex-wife and two children. The

sentences for the two cases were to run consecutively, yielding a total sentence for both convictions of a four-year prison term, with day-for-day good time to apply, followed by four to eight years of mandatory supervised release (MSR). Brzowski appealed his convictions.

In September 2013, Brzowski had completed his actual incarceration time and was released to begin a four-year MSR term. Twenty days after his release, Brzowski was arrested for MSR violations, and on November 29, 2013, he was remanded to the Illinois Department of Corrections (IDOC) to serve the remainder of his MSR.

An Illinois appeals court reversed both of Brzowski's convictions in 2015 and remanded to the Will County court for new trials. The government dropped one of the cases, and Brzowski pled guilty to all counts in the other. A Will County judge subsequently sentenced Brzowski to a three-year prison term, followed by four years of MSR. The sentencing order, signed and dated July 22, 2015, stated that Brzowski was to receive fifty percent good time credit and that he was entitled to credit for 1,452 days of time actually served in custody as of that date. The order set forth the specific dates for which Brzowski was to receive credit: "11-7-10, 12-7-10, 2-7-11 to 6-23-11, 11-29-11 to 9-10-13 and 10-1-13 to July 22, 2015." Defs.' L.R. 56.1 Stmt., Ex. 10 (dkt. no. 129-10) at 2.

To facilitate Brzowski's appearance at his July 2015 sentencing hearing in Will County court, IDOC had transferred him to its Northern Reception and Classification Center (NRC) from Pinckneyville prison, where he had been held since his MSR violation in 2013. After the sentencing, Brzowski remained in custody at the NRC. On October 14, 2015, IDOC's Prisoner Review Board reduced Brzowski's four-year MSR

term to two years.

On October 21, 2015, he was transferred from the NRC to Pontiac Correctional Center. Shortly after his arrival there, Brzowski and Hadley were involved in an altercation, the details of which the parties dispute. It is undisputed, however, that following the incident, Hadley issued a disciplinary ticket alleging that Brzowski had assaulted him and disobeyed a direct order. IDOC's Adjustment Committee held a hearing on the ticket, found Brzowski guilty of both alleged violations, and ordered discipline of twelve months in segregation.

Brzowski remained in custody at Pontiac until July 2017. He was released after an Illinois appeals court ruled that, *as of July 2015*, he had completed the term of his sentence for violating the order of protection. *Brzowski v. Pierce*, 2017 IL App (3d) 160228-U ¶¶ 15, 20. The court found that after applying the credit for time served listed in the July 2015 order to Brzowski's sentence on remand—a three-year prison term and a four-year MSR term, with good time credit—he had only eight days remaining on his full sentence as of July 22, 2015. *Id.* ¶ 15. By the time of the appeals court's ruling in June 2017, Brzowski had remained incarcerated for nearly two extra years beyond those eight days. *See id.* ¶ 20. Accordingly, the appellate court reversed and remanded the trial court's denial of Brzowski's 2015 emergency petition for habeas corpus. On remand, a Will County judge ordered Brzowski's release. IDOC released Brzowski on July 20, 2017.

From November 2015 through February 2017, Brzowski made thirty complaints at Pontiac that he was being improperly held past his release date. All of these complaints were referred to Sigler for consideration. Sigler's responses are

3

documented in an IDOC database called "CHAMPS." A November 23, 2015 CHAMPS entry states that Sigler responded to the first of Brzowski's complaints by informing him that she had reviewed his "masterfile . . . along with [his] Judgment Order from Will county" and concluded that he was not entitled to discharge until April 2017. Defs.' L.R. 56.1 Stmt. (dkt. no. 130) Ex. 14 at 19. She explained her calculation: he had already served his term of imprisonment and had an "MSR [start] date of 1/30/13"; he was "not received at IDOC until 7/28/15"; and "[d]ue to the Johnson Decision, your parole time starts on the day you are released having served your incarceration time, 7/28/15." *Id.* Adding four years to that date, Sigler continued, "calculates your discharge date as 7/28/19." *Id.* She then cited the Prisoner Review Board's October 2015 decision reducing Brzowski's MSR term to two years and concluded that his "discharge date[] is 4/28/2017." *Id.* Sigler noted that these calculations "have been performed in accordance with your Judgment Order and your PRB violation order." *Id.*

The parties dispute whether, at the time Sigler issued this response to Brzowski, there was a copy of his "master file" at Pontiac. The parties, agree, however, that Brzowski's master file would have included the 2015 sentencing order, which should have been used to calculate Brzowski's time served. The defendants contend that Sigler's November 23, 2015 CHAMPS entry indicates that she had Brzowski's master file and a copy of the 2015 sentencing order. Brzowski disputes this, pointing to a June 26, 2017 e-mail to Sigler from an associate from Pinckneyville's record office stating "[A]ttached is section 1 of Walter Brzowski's master-file." Pl.'s L.R. 56.1 Stmt. (dkt. no. 138) Ex. 11 at 2. To this, Sigler responded "Thank you so much!!!!!!!!!!!!!!!!!!" *Id.*

After receiving Sigler's initial response that his discharge date was not until April

4

2017, Brzowski complained that "the response he received [on] 11/23/15 is incorrect and flawed." Defs.' L.R. 56.1 Stmt. (dkt. no. 130), Ex. 14 at 19. On November 25, 2015, Sigler replied: "The response I sent to you explains you[r] calculation of the Judgment order received. If you feel you[r] time is calculated incorrect, an amended Judgment order must be received. You need to contact your attorney or the court." *Id.* Sigler's responses to all of Brzowski's subsequent complaints were similar: she informed him that his "concern has been addressed and will not be re-visited" and that his release date would not change without another sentencing order. *Id.* at 10, 14; *see id.* at 8-18.

Brzowski filed this action against Sigler, Hadley, IDOC's director, and the wardens of the Statesville and Pontiac prisons, asserting several claims under 42 U.S.C. § 1983.[1] The defendants moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss all of the claims in Brzowski's second amended complaint for failure to state a claim. The Court dismissed a claim against all defendants for failing to intervene in the constitutional violations underlying the other section 1983 claims. It also dismissed all defendants but Sigler and Hadley but otherwise denied the motion. The surviving claims in Brzowski's second amended complaint were two Fourteenth Amendment claims against Sigler and an Eighth Amendment claim.

---

[1] An Executive Committee order entered in 2008 and extended thereafter prohibited Brzowski from filing any case in this district without leave of the Committee. Brzowski's counsel filed this suit without seeking such leave, evidently believing that the order applied only to *pro se* filings—which is what had motivated the Executive Committee order in the first place. The defendants argue that this suit is barred by the order. The undersigned judge brought the matter to the attention of the Executive Committee. On June 24, 2020, the Committee entered an order retroactively granting Brzowski leave to file this case, noting that if he had sought leave to file at the outset, it would have been granted.

5

In September 2019, Brzowski moved for summary judgment on his Fourteenth Amendment claims against Sigler and his Eighth Amendment claim against Sigler and Hadley. Sigler also moved for summary judgment in her favor on the Fourteenth Amendment claims. And Hadley and Sigler both moved for summary judgment on Brzowski's Eighth Amendment claim, pointing out (correctly) that he did not name either of them as a defendant in that claim. After the parties had fully briefed their initial motions for summary judgment, the Court authorized Brzowski to file a third amended complaint, adding an Eighth Amendment claim against Sigler and Hadley. The defendants then moved again for summary judgment on the Eighth Amendment claim.

In short, Brzowski's third amended complaint contains three section 1983 claims, and the parties have moved for summary judgment in their favor on each.[2] Count 1 is a Fourteenth Amendment claim against Sigler for violating Brzowski's due process rights. Count 2, also against Sigler, is a claim of false imprisonment in violation of the Fourteenth Amendment. Count 3 is an Eighth Amendment claim against both Sigler and Hadley.

## Discussion

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a summary judgment motion, the Court must consider all facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Figgs v. Dawson*, 829 F.3d 895, 902 (7th

---

[2] Additionally, the defendants have moved to strike two exhibits to Brzowski's Local Rule 56.1 Statement. The Court did not rely on either exhibit in ruling on the parties' motions for summary judgment, so it denies the motion to strike as moot.

Cir. 2016). Summary judgment is not appropriate if a reasonable jury could return a verdict for the nonmoving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018).

**A.    Hadley**

Brzowski alleges that Hadley violated his Eighth Amendment rights by making false accusations in the disciplinary ticket that led to his placement in segregation. Hadley has moved for summary judgment, arguing that this claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). The Court agrees. *Heck* prohibits a plaintiff from challenging in a section 1983 suit a finding that was essential to the decision in a prior prison-discipline case, unless and until that decision has been overturned. *See Heck*, 512 U.S. at 489; *Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2011). Brzowski's claim is based on his contention that Hadley's accusations in the disciplinary ticket were false, but IDOC's Adjustment Committee found the opposite. This finding, which has never been overturned, was essential to the decision to discipline Brzowski. His Eighth Amendment claim against Hadley is therefore barred by *Heck*, and the Court dismisses him from count 3.

**B.    Sigler**

**1.    Claim preclusion**

Preliminarily, Sigler argues that all of Brzowski's section 1983 claims against her are barred by the doctrine of claim preclusion, or res judicata. She points to two prior cases in which Brzowski, proceeding *pro se*, sued her for improperly detaining him past his release date. On January 12, 2016, Brzowski filed a *pro se* lawsuit against Sigler in the Central District of Illinois, alleging that her improper calculations and deliberate

7

indifference to his complaints had caused his detention beyond his release date. A judge dismissed the case on February 22, 2016, citing the Prison Litigation Reform Act's "three strikes" rule and also stating that Brzowski's claim was barred because he was suing for "damages for his alleged illegal incarceration, which does not state a claim under 42 U.S.C. 1983 because his sentence has not been invalidated. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)." Defs.' L.R. 56.1 Stmt. (dkt. no. 114), Ex. 16 at 11.. Shortly after this ruling, on March 2, 2016, Brzowski filed in state court in Livingston County a petition for mandamus, seeking an order directing Sigler to recalculate his sentence correctly, which he alleged would entitle him to immediate release. In December 2016, a judge dismissed the case, concluding that Brzowski had not properly supported his claim. This, of course, all happened before the Illinois Appellate Court, in June 2017, ruled that Brzowski was, in fact, entitled to immediate release.

Sigler's claim preclusion defense lacks merit, for at least three reasons. First, she forfeited the defense by failing to plead it as an affirmative defense in her answer and by failing to raise it in any way, shape, or form until she filed her motion for summary judgment—without, the Court notes, asking leave to amend the answer. Res judicata is one of the defenses expressly listed in Federal Rule of Civil Procedure 8(c)(1), and the defense was unquestionably available to Sigler from the outset of this suit. Brzowski would be unfairly prejudiced by the delay because he went all the way through pretrial proceedings, including completing discovery, before the defense was first asserted. For this reason, Sigler is barred from asserting the defense now. *See Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 478-82 (7th Cir. 2019).

Second, the defense lacks merit. The judge in the Central District of Illinois case ruled that *Heck* barred Brzowski's claim. Application of claim preclusion requires, among other things, "a final judgment on the merits in the first suit." *Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014). A dismissal based on *Heck* is not a judgment on the merits. Rather, it means the suit "is premature and must be dismissed without prejudice, because *Heck* holds that the claim does not accrue" until the underlying judgment has been overturned. *Johnson v. Rogers*, 944 F.3d 966, 968 (7th Cir. 2019). So the decision in the Central District lawsuit is not claim-preclusive. Nor is the decision in the Livingston County mandamus suit. When Brzowski filed it, he had just gotten a ruling by a federal judge that he could not maintain a suit for damages because the sentence that had been imposed—as Sigler was enforcing it—had not been overturned. (Indeed, the mandamus action was effectively an effort to get it overturned.) Claim preclusion under Illinois law, which governs the effect of the state court judgment, *see Lawler v. Peoria School District No. 150*, 837 F.3d 779, 785 (7th Cir. 2016), applies to claims that "*could have* been decided" in the first action, *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467, 889 N.E.2d 210, 213 (2008) (emphasis added). This claim, a federal judge had told Brzowski, could not even be asserted at that point, let alone decided. Claim preclusion does not apply, and doing so under the circumstances would be fundamentally unfair given what the federal judge had ruled. *See Nowak v. St. Rita High Sch.*, 197 Ill. 2d 381, 390, 757 N.E.2d 471, 477 (2001) (claim preclusion does not apply where it would be "fundamentally unfair to do so").

Third, even if this were not so, what Brzowski arguably did is a form of claim-splitting: asserting a state-law claim in state court and a federal-law claim here. Claim

9

preclusion "prohibits a party from later seeking relief on the basis of issues which might have been raised in the prior action" and "prevents a litigant from splitting a single cause of action into more than one proceeding." *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 339, 665 N.E.2d 1199, 1206 (1996). Under Illinois law, there is an exception to claim preclusion where a defendant has acquiesced to the suit by failing to timely object. *See Lawler*, 837 F.3d at 785. In *Lawler*, the Seventh Circuit held that a defendant had acquiesced to claim-splitting by waiting eighteen months into litigation of the case to assert the defense of claim preclusion at the summary judgment stage. *Id.* Here the delay was the same, if not longer: twenty-one months after Brzowski filed the suit, and eighteen months after counsel appeared for the defendants. A finding of acquiescence is unavoidable. *See id.*; *Piagentini v. Ford Motor Co.*, 366 Ill. App. 3d 395, 403, 852 N.E.2d 356, 363 (2006) (defendant acquiesced to claim-splitting by participating in discovery and waiting three and a half years to assert res judicata); *cf. Bonnstetter v. City of Chicago*, 811 F.3d 969, 975 (7th Cir. 2016) (no acquiescence to claim splitting where claim preclusion raised as defense "in all motions filed in the district court").

For these reasons, Sigler's claim preclusion defense lacks merit.

### 2. Eighth Amendment claim

In count 3 of his third amended complaint, Brzowski alleges that Sigler violated his Eighth Amendment rights by detaining him for nearly two years beyond his release date. "Incarceration beyond the date when a person is entitled to be released violates the Eighth Amendment if it is the product of deliberate indifference." *Figgs*, 829 F.3d at 902. To prevail on such a claim, a plaintiff must show that a defendant's "deliberate

indifference caused him to be held beyond his lawful term of incarceration." *Id.* at 905 n.5. Deliberate indifference means "ignor[ing] a known risk." *Id.* at 903. "A state officer is deliberately indifferent when [s]he does nothing, or when [s]he takes action that is so ineffectual under the circumstances that deliberate indifference can be inferred." *Id.* (internal citations omitted).

Sigler argues that given the evidence that she investigated and issued written responses to each of Brzowski's complaints, no reasonable juror could find that she was deliberately indifferent. The Court disagrees; a reasonable jury could find that Sigler was deliberately indifferent to a known and significant risk that Brzowski was being held past his release date. First, despite Brzowski's thirty complaints from November 2015 to February 2017 that his release date was incorrect, Sigler never requested his master file from Pinckneyville. And it is undisputed that the master file included all of the information Sigler would have needed to correctly calculate his sentence and time served.

Sigler points to evidence suggesting that she did in fact have Brzowski's master file and reviewed it when responding to his complaints. Thus, she contends that evidence of lack of efforts to acquire his master file does not support an inference of deliberate indifference. But Sigler's June 2017 e-mail thanking the Pinckneyville record office for sending her Brzowski's master file supports an inference that she did not, in fact, have the master file before that. The Court concludes that there is a genuine factual dispute over whether Sigler had the information she needed to properly calculate Brzowski's sentence in response to his repeated complaints

And even if Sigler did have the master file and recalculated Brzowski's sentence

11

in response to each complaint (or at least more than once), the evidence would allow a reasonable juror to conclude that Sigler's efforts were "so ineffectual under the circumstances that deliberate indifference can be inferred." *Id.* It is undisputed that Brzowski's master file included the July 2015 sentencing judgment, which listed the exact dates for which Brzowski was entitled to receive time-served credit. Applying those 1,452 days of time served against Brzowski's sentence on remand would have revealed, by simple subtraction, that he had only eight days of his sentence remaining as of July 22, 2015. The calculation was simple enough that a reasonable jury could find that Sigler's repeated rebuffing of Brzowski's complaints suggests that she never bothered to do the math herself or had done it in a way that was obviously flawed. In short, the evidence supports a reasonable inference that Sigler's efforts were ineffectual: they yielded the erroneous conclusion that Brzowski's release date was in April 2017.

      Finally, Sigler contends that her erroneous sentence calculations do not amount to deliberate indifference because they were based on her reasonable, but mistaken, interpretation of the Supreme Court's decision in *Johnson v. United States*, 529 U.S. 53 (2000). In support of this argument, Sigler cites *Armato v. Grounds*, 766 F.3d 713 (7th Cir. 2014), which involved IDOC officials' improper refusal to release the plaintiff based on their mistaken understanding of law. *See id.* at 721. The court in *Armato* ruled that the officials had not been deliberately indifferent because they "were actively pursuing assistance from the AG's Office from the moment they discovered Armato's release appeared contrary to state law." *Id.* By contrast, Sigler testified that—despite Brzowski's repeated complaints that his continued custody was contrary to law—she

12

never sought advice from an IDOC attorney or the Illinois Attorney General's office. Thus, Sigler's efforts were not analogous to that of the state officials in *Armato*, and her reliance on this case does not entitle her to summary judgment. *Accord, Figgs*, 829 F.3d at 904 (holding that a reasonable jury could find deliberate indifference by IDOC records official where there was no evidence that she sought legal guidance from "any state officials such as IDOC attorneys, the Circuit Court, or the Office of the Attorney General").

Sigler contends that even if the evidence could support a finding that she was deliberately indifferent, it is insufficient to permit a reasonable juror to conclude that this caused Brzowski's detention beyond his release date. *See Figgs*, 829 F.3d at 905 n.5. She argues that she was bound by the Will County court's sentencing orders, and there was no order authorizing Brzowski's release until June 2017. This argument lacks merit. The court's sentencing orders include the one issued in July 2015, under the terms of which Brzowski had fully served his sentence as of July 30, 2015. A reasonable juror could find that his continued detention for almost two additional years was a result of Sigler's deliberate indifference, either on the basis that she never obtained or looked at the July 2015 judgment or botched (or did not perform) the calculation of Brzowski's time to be served based on the order.

For these reasons, the Court denies Sigler's motion for summary judgment on count 3.

Brzowski has also moved for summary judgment on this claim. He contends that based on the evidence of Sigler's failure to acquire his master file prior to 2017, properly calculate his release date based on the July 2015 sentencing order, and seek legal

13

advice (or do anything different) in the face of his repeated complaints, no reasonable jury could find for Sigler. In ruling on Brzowski's motion, the Court must view the evidence in the light most favorable to Sigler, the nonmoving party. *See Figgs*, 829 F.3d at 902. Sigler points to evidence—her own testimony and the November 2015 CHAMPS entry—suggesting that she did in fact have Brzowski's master file and that she reviewed it and recalculated his sentence each time he complained. Thus, a reasonable jury could find that Sigler took some action in response to Brzowski's complaints and that she was simply negligent or mistaken, not deliberately indifferent. For these reasons, the Court denies Brzowski's motion for summary judgment on count 3.

### 3. Fourteenth Amendment claims

Brzowski has asserted two claims against Sigler under the Fourteenth Amendment: violation of his due process rights (count 1) and false imprisonment (count 2).

In count 1, Brzowski claims that Sigler violated his due process rights by repeatedly "oppos[ing] [his] petitions to be released and falsely represent[ing] that [he] was correctly incarcerated." 3d Am. Compl. (dkt. no. 125) ¶ 53. Sigler argues that she is entitled to summary judgment on this claim because Brzowski has failed to provide any evidence that he lacks adequate state law remedies. Where a section 1983 plaintiff is "challenging the mistakes made by state employees rather than the state procedures by which those mistakes were made," a court must first consider the adequacy and availability of post-deprivation state law remedies before concluding that a deprivation violates Fourteenth Amendment due process protections. *Figgs*, 829 F.3d at 907

14

(quoting *Toney–El v. Franzen*, 777 F.2d 1224, 1227 (7th Cir. 1985)). Sigler points out, correctly, that state law remedies such as a lawsuit for false imprisonment are adequate and were available to Brzowski. *See Toney-El*, 777 F.2d at 1228. Brzowski does not dispute this point. Sigler is entitled to summary judgment on count 1.

Sigler has also moved for summary judgment on the false imprisonment claim, arguing that there is insufficient evidence for a reasonable juror to find for Brzowski. He did not dispute this and has therefore conceded the point. Sigler is entitled to summary judgment on count 2.

### 4. Qualified immunity

Finally, Sigler argues that even if Brzowski has raised triable claims that she violated his constitutional rights, she is entitled to qualified immunity. Because the Court has dismissed the Fourteenth Amendment claims against Sigler, it addresses only Brzowski's Eighth Amendment claim.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Figgs*, 829 F.3d at 905 (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)) (internal quotation marks omitted). Once a defendant raises the qualified immunity defense, a plaintiff must show that there has been a violation of his federal constitutional rights and that the constitutional standards at issue were "clearly established at the time of the alleged violation." *Id.* The law is "clearly established" when "various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand." *Id.* (quoting *Campbell v. Peters*, 256 F.3d

15

695, 699 (7th Cir. 2001)).

As already discussed, the evidence is sufficient at this stage to support a finding that Sigler violated Brzowski's Eighth Amendment rights by failing to respond to his complaints by obtaining the relevant documentation or legal advice necessary to confirm his release date. Thus, the availability of the qualified immunity defense turns on whether the relevant constitutional standard was "clearly established at the time of the alleged violation," from November 2015 through February 2017. *See id.* It was. In the closely analogous case *Figgs*, the Seventh Circuit held that even as of 2011, when the plaintiff had complained to a prison record official that his release date was wrong, "it was clearly established . . . that the failure to investigate a claim that an inmate is being held longer than the lawful term of his sentence violates the Eighth Amendment if it is the result of indifference." *Id.* at 906. In light of *Figgs*, Sigler's qualified immunity defense is patently lacking in merit.

**C.    Indemnification**

The defendants have also moved for summary judgment on count 4, styled as an indemnification claim requiring the State of Illinois to pay out any judgment against Sigler or Hadley. The defendants contend that this claim is barred by the Eleventh Amendment, which prohibits the Court for entering a judgment ordering Illinois to indemnify Sigler and Hadley. But count 4 is not a claim against the State of Illinois; it is a request for an injunction ordering the defendants to submit their damages to the State for indemnification. *See Brzowski v. Baldwin*, No. 17 C 9339, 2018 WL 4917084, at *3 (N.D. Ill. Oct. 9, 2018). As a result, the claim is not barred by the Eleventh Amendment, which precludes only suits for damages against a state.

16

**Conclusion**

For the foregoing reasons, the Court grants the defendants' first motion for summary judgment on counts 1 and 2 and otherwise denies the motion [dkt. no. 97]. The Court dismisses Hadley from count 3 but otherwise denies the defendants' second motion for summary judgment [dkt. no. 127]. Brzowski's motion for summary judgment is denied [dkt. no. 81]. The case is set for a status hearing on June 30, 2020 at 9:00 a.m. to discuss the trial and the final pretrial order, as well as the possibility of settlement. The status hearing will be conducted by telephone using the following call-in number: 888-684-8852, access code 746-1053. Counsel should wait for the case to be called before announcing themselves.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: TKMONTH __, 2020